# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LYLE VANNAHMEN,

    *Plaintiff,*

v.

DODGE CITY COMMUNITY COLLEGE,

    *Defendant.*

Case No. 17-CV-1174-EFM

## MEMORANDUM AND ORDER

This case arises out of Plaintiff Lyle VanNahmen's suspension from Defendant Dodge City Community College ("DCCC"). While enrolled as a student at DCCC, VanNahmen expressed displeasure to DCCC's president regarding a proposal for DCCC to sell land for retail development and demanded the president's resignation. DCCC subsequently suspended VanNahmen for four years. Plaintiff filed suit against DCCC alleging a violation of his procedural due process rights, alleging that DCCC retaliated against him for exercising his First Amendment rights, and asking the Court to exercise "judicial review over DCCC's student disciplinary proceedings involving [VanNahmen]." This matter comes before the Court on DCCC's Motion to Dismiss (Doc. 6). For the reasons stated below, the Court grants in part and denies in part DCCC's motion. It grants DCCC's motion as to Count III of VanNahmen's Complaint, and denies DCCC's motion as to Counts I and II of VanNahmen's Complaint.

## I. Factual and Procedural Background[1]

As of December 2016, VanNahmen was enrolled at DCCC, a community college located in Dodge City, Kansas. At that time, a public controversy existed in Dodge City regarding a proposal for DCCC to sell land for retail development. On December 5, 2016, VanNahmen met with the president of DCCC, Dr. Harold Nolte, in Dr. Nolte's office, to "express displeasure" about the land sale proposal. Accounts differ on the degree of contentiousness present in the meeting between VanNahmen and Dr. Nolte, but Dr. Nolte acknowledged that VanNahmen did not curse at or physically assault him. Dr. Nolte, however, has taken the position that VanNahmen raised his voice during the meeting and that the encounter left Dr. Nolte feeling threatened.

On December 8, 2016, VanNahmen went to the DCCC student union, which also houses the school's administrative offices, and sought to deliver a letter to Dr. Nolte. The letter demanded Dr. Nolte's resignation. At some point,[2] DCCC security had been "placed on alert," and a campus security officer, Steven Sites, informed VanNahmen that Dr. Nolte was unavailable and that Sites would deliver VanNahmen's letter to Dr. Nolte. VanNahmen then left.

Two days later, on December 10, DCCC Vice President Bev Temaat and Security Director Josh Thompson directed Sites to deliver a notice to VanNahmen which informed him of his temporary suspension from DCCC for violating the Student Code of Conduct, specifically the Behavior Misconduct section, pending a conduct review hearing. It also informed him that he would be arrested if he appeared on DCCC's campus other than to take a previously scheduled

---

[1] For purposes of this motion, the Court accepts as true the facts as alleged in VanNahmen's Complaint and the exhibits attached thereto and views them in the light most favorable to VanNahmen.

[2] VanNahmen simply alleges, "Security was placed on alert." His Complaint does not clarify whether security had been placed on alert after the December 5 encounter, on December 8 when VanNahmen arrived at the student union, or at some other point in time.

final examination on Monday, December 12, 2016. Sites delivered the notice to VanNahmen on December 10. VanNahmen describes both encounters with Sites—the December 8 and December 10 encounters—as "polite."

On March 5, 2017, Temaat sent VanNahmen a notice of hearing—this is the document that VanNahmen considers to be the "charging document" against him. The notice, attached as an exhibit to the Complaint, informed VanNahmen that a formal disciplinary hearing had been set for Wednesday, March 8, to determine VanNahmen's "alleged involvement in violations of the DCCC Code of Conduct." It identified the "specific allegations" as violations of "conduct expectations noted in the Behavior Misconduct (page 78) and Assault (page 80) sections of the Code of Conduct on or about December 5, 2017 and on or about December 8, 2017,"[3] and quoted the language of the Behavior Misconduct section, underlining and bolding the allegedly applicable portions of the provision.[4] The notice also stated: "[a]ccording to the DCCC Code of Conduct, students can be held responsible for their behavior on or off campus."

---

[3] Although the notice stated that the alleged improper conduct occurred in 2017, VanNahmen does not take issue with this apparent typo. Indeed, neither party addresses this issue, but instead proceed in their arguments as if the notice referenced December 5 and 8 of *2016*.

[4] The March 5, 2017 notice sets out the charges as follows:

**Behavior Misconduct** (page 78), states *"Students are **not to exhibit behavior** that **threatens any person**, harms, or causes to place in harm any person or **conduct themselves in a** lewd, indecent, obscene, offensive, or **disorderly manner**."*

**Assault** (page 80), states *"Any actual or **threatened interference**, physical attack or sexual attack, physical or verbal harassment, **intimidation**, or personal abuse against any member of the College community is forbidden."*

Of special note: Only the underlined and bolded provisions of each code of conduct section are included in the allegations/charges specifically related to your formal conduct review hearing.

(alterations in original).

On March 6, 2017, VanNahmen retained his current counsel to represent him in connection with the conduct review hearing.[5] VanNahmen's counsel requested discovery, made numerous demands for due process, alleged that VanNahmen's "conduct was protected by the First Amendment to the United States Constitution," and requested a pre-hearing conference. Although DCCC did not respond to VanNahmen's allegation that he had engaged in activity protected by the First Amendment, it provided responses to the due process requests on March 24, 2017.[6]

One of VanNahmen's numerous "due process demands" was a request that "he be provided specific notice of the conduct that he must defend against at the earliest possible opportunity." The demand noted that VanNahmen considered the March 5 letter the "charging document," and described it as a "moving target." It also stated:

> From the materials [VanNahmen] presently has he cannot make heads nor tails of what behavior he allegedly exhibited that was threatening, who he allegedly threatened, what conduct he allegedly displayed that was allegedly disorderly, as alleged by whom, what interference he allegedly threatened, to whom, what alleged intimidating conduct he displayed, who was allegedly intimidated, and what permutation of these alleged events occurred December 5, 2016 and December 8, 2016.

DCCC declined to provide more specific notice. Rather, it responded: "DCCC refers [VanNahmen] to the March 5, 2017, 'charging document' which sets forth the violations of the Code of Conduct alleged by the College."

VanNahmen's conduct review hearing occurred on April 25, 2017. On May 2, 2017, Temaat authored a letter to VanNahmen indicating that the Judicial Hearing Board had found that he had committed misconduct. Temaat, however, did not send this letter immediately. Instead,

---

[5] VanNahmen had previously retained an attorney after receiving the December 10, 2016, notice.

[6] It is unnecessary, for purposes of this motion, to delve into each of VanNahmen's due process demands and DCCC's corresponding responses.

-4-

on May 30, 2017, DCCC invited VanNahmen to offer evidence to Temaat in mitigation of his conduct. VanNahmen's counsel requested a meeting to discuss the parameters of the proposed meeting, but DCCC declined this request and sent VanNahmen the previously drafted letter. VanNahmen received the letter on June 5, 2017, and timely appealed the hearing order. On June 30, 2017, the Dean of Workforce Development, Ryan Ausmus, upheld the order with no revisions.

VanNahmen filed his Complaint in this case on July 24, 2017, alleging claims under 42 U.S.C. § 1983 for violations of his procedural due process rights and for First Amendment retaliation. He also requests that the "Court exercise judicial review over DCCC's student disciplinary proceedings involving him." DCCC filed its motion to dismiss on September 6, 2017, arguing that VanNahmen's Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails to state a claim upon which relief can be granted.[7] Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[8] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds on which the claims rests.[9] A claim is facially plausible if the plaintiff pleads facts

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[10] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[11] The Court assumes all well-pleaded facts to be true and construes them in the light most favorable to the non-moving party.[12] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[13]

### III. Analysis

**A. Procedural Due Process**

"The Due Process Clause of the Fourteenth Amendment does not prohibit the government from depriving an individual of 'life, liberty, or property'; it protects against governmental deprivations of life, liberty, or property 'without due process of law.' "[14] Thus, to pursue a procedural due process violation, the plaintiff must have been deprived of a constitutionally protected right without due process of law, and the defendant must have "acted under color of state law."[15] Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the

---

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] *Id.* at 679.

[12] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). Allegations that merely state legal conclusions, however, need not be accepted as true. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[14] *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).

[15] *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). Here, DCCC acted under color of state law because community colleges are considered political subdivisions under Kansas law. *Bland v. Kan. City Cmty. Coll.*, 271 F. Supp. 2d 1280, 1287 (D. Kan. 2003).

second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[16] DCCC does not contest for purposes of this motion whether VanNahmen had a protected property or liberty interest in his continued enrollment.[17] Accordingly, the Court will analyze only whether VanNahmen has adequately pleaded facts to satisfy the second inquiry.

Due process requires, at a minimum, notice and an opportunity to be heard prior to the deprivation of a constitutionally protected interest.[18] The specific process due in a given case will depend to an extent on the specific circumstances presented, as "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."[19] For example, the requirements for procedural due process in school proceedings differ depending on whether the hearing at issue involves an academic judgment or a disciplinary action—the latter type of hearing requiring more stringent procedural safeguards.[20] Further, suspensions lasting longer than 10 days or expulsions may require more formal procedures than short suspensions.[21]

---

[16] *Lauck v. Campbell Cty.*, 627 F.3d 805, 811 (10th Cir. 2010) (quotation marks and citation omitted).

[17] Without deciding the issue here, the Court notes that the Tenth Circuit has recognized a constitutionally protected interest in several educational settings. *See, e.g.*, *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) (noting that a student had a property interest in his place in nursing school); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (determining that a part-time graduate psychology student had a property interest in his enrollment); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) (concluding that the individual's enrollment fee in a vocational nursing program granted her a property interest in her continued education). *See also Brown v. Univ. of Kan.*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014) (finding that a student had a property interest in his continued education in law school); *Lee v. Kan. State Univ.*, 2013 WL 2476702, at *6 (D. Kan. 2013) (noting that "the Tenth Circuit recognizes a constitutional right to due process before a student can be deprived of her property interest in her continued enrollment and graduate education.").

[18] *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

[19] *Id.* at 578.

[20] *Harris*, 798 F.2d at 423.

[21] *Goss*, 419 U.S. at 584.

While VanNahmen asserts numerous procedural failings in support of his procedural due process claim,[22] the Court need only address one allegation here—DCCC's alleged failure to provide VanNahmen with sufficient notice of his alleged misconduct. In his Complaint, VanNahmen identifies the March 5, 2017, letter as the notice of the charges against him—he describes the notice as vague and as a "moving target." He told DCCC that the information, including the notice, provided to him do not clearly indicate what VanNahmen allegedly did wrong, and thus, that he could not mount a proper defense in the absence of a more specific statement. DCCC declined to provide further clarification; but instead, merely referred VanNahmen back to the March 5 letter, which stated:

> Please accept this letter as written confirmation that a formal disciplinary hearing has been scheduled for **Wednesday, March 8th** . . . . The purpose of the disciplinary hearing is to determine your alleged involvement in violations of the DCCC Code of Conduct. These specific allegations are that you violated conduct expectations noted in the Behavior Misconduct (page 78) and Assault (page 80) sections of the Code of Conduct on or about December 5, 2017 and on or about December 8, 2017. Specifically, the charges are as follows:
>
> **Behavior Misconduct** (page 78) states "*Students are **not to exhibit behavior** that **threatens any person**, harms, or causes to place in harm any person or **conduct themselves in a** lewd, indecent, obscene, offensive, or **disorderly manner**.*"

---

[22] VanNahmen alleges that DCCC deprived him of a liberty and/or property interest without due process of law because the hearing panel was not impartial, an employee of Dr. Nolte decided the appeal (implying, though not alleging bias), DCCC did not provide a report authored by the complainant to VanNahmen, DCCC did not inform VanNahmen whether certain witnesses would be available for examination at the hearing, DCCC prohibited VanNahmen's counsel from participating in the examination of witnesses, DCCC denied VanNahmen's request for an open hearing, DCCC failed to provide VanNahmen with sufficient notice of the potential penalties associated with the charges against him, DCCC's ex parte suspension of VanNahmen was improper, and the proceedings afforded VanNahmen were merely a farce as evidenced by events occurring between the conclusion of the hearing and the time when VanNahmen received the decision. Because the level of process required may differ in different contexts, the Court concludes that it would be imprudent to address each of these allegations on a factual record that has not yet been fully developed. *See id*.

> **Assault** (page 80), states *"Any actual or **threatened interference**, physical attack or sexual attack, physical or verbal harassment, **intimidation**, or personal abuse against any member of the College community is forbidden."*
>
> Of special note: Only the underlined and bolded provisions of each code of conduct section are included in the allegations/charges specifically related to your formal conduct review hearing.
>
> According to the DCCC Code of Conduct, students can be held responsible for their behavior on or off campus. . . .

While the amount of notice required may differ in different circumstances, "[d]ue process requires that a student be made aware of the charges facing him so that he may prepare a proper defense."[23] VanNahmen alleges that he did not receive sufficient notice of the charges against him, and the Court concludes that he has adequately pleaded a procedural due process violation based on a lack of notice. DCCC's letter only vaguely refers to disorderly and threatening behavior, without providing any context other than that it allegedly occurred "on or about" two specific dates. Indeed, the letter further clouds this issue by stating that students can be held responsible for their behavior whether on or off campus.

DCCC's arguments that VanNahmen fails to adequately plead a procedural due process claim rely on factual assertions that the Court cannot consider under the motion to dismiss standard and on an easily distinguishable case. First, DCCC argues that "Plaintiff's Complaint and Exhibit E also indicate that he was afforded, at his request, a pretrial conference where the charges were discussed, witnesses identified, and documents concerning what the testimony of those witnesses would be was provided," that VanNahmen "states that the defendant complied" with his request for all materials DCCC intended to present or reference at the hearing, and that VanNahmen

---

[23] *Smith v. Barber*, 316 F. Supp. 2d 992, 1033 (D. Kan. 2004). *See also Goss*, 419 U.S. at 579 ("[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved."); *Watson*, 242 F.3d at 1240 (same).

"clearly understood the charges to involve the contentiousness and threatening manner of his confrontation of the president." These arguments show either a complete misunderstanding of the legal standard governing motions to dismiss or a total disregard for it.

Nowhere in his Complaint or Exhibit E does VanNahmen state that the charges against him were discussed at a pretrial conference. Exhibit E simply memorializes DCCC's responses to VanNahmen's "due process demands" and the only portion of the Exhibit relating to the charges against VanNahmen simply refers him to the vague March 5, 2017 letter.[24] VanNahmen specifically alleges that DCCC declined to provide a more specific statement of the charges against him. Likewise, nowhere in VanNahmen's Complaint does he state that DCCC complied with his request for additional material; rather, Exhibit E shows that DCCC "indicates it will provide any additional materials . . ." Stating an intention to provide information is not equivalent to actually providing the information. And, VanNahmen alleges that DCCC did not comply as it withheld a written report prepared by Dr. Nolte. Finally, nowhere in his Complaint does VanNahmen concede that he "understood the charges to involve the contentiousness and threatening manner of his confrontation of the president." Indeed, if the charges only involved his confrontation with the president, then the March 5 notice becomes more confusing as it references misconduct on a date that VanNahmen alleges he did not have contact with the president—December 8.

---

[24] To the extent DCCC's statement that "the charges were discussed" at the pretrial conference is a reference to the fact that DCCC declined to provide a more specific explanation of VanNahmen's alleged improper conduct, and thus the parties "discussed" the charges, this statement is misleading. To the extent it seeks to introduce additional facts not contained in VanNahmen's Complaint, it ignores the legal standard governing motions to dismiss.

Second, the case DCCC relies upon, *Neal v. Colorado State University-Pueblo*,[25] does not support dismissal of VanNahmen's claim. Rather, that case only briefly mentioned notice and involved materially distinguishable facts.[26] *Neal* is not persuasive.

VanNahmen's Complaint plausibly alleges that DCCC failed to provide him with sufficient notice of the charges against him before depriving him of a constitutionally protected interest, and states a valid claim under § 1983 for violation of his procedural due process rights. Accordingly, DCCC's motion to dismiss VanNahmen's procedural due process claim is denied.

**B.       First Amendment Retaliation**

DCCC next argues that VanNahmen fails to state a claim for First Amendment retaliation because (1) he fails to plead facts "asserting how his interest in seeking the president's resignation by marching into his office with a prepared letter and demanding a signature outweighs the interests of defendant insuring [sic] that the manner in which members of the campus community conduct themselves is not threatening or disruptive," and (2) he "pleads no facts sufficient to show that it is plausible that plaintiff's suspension was in response to his speech."[27] DCCC argues that

---

[25] 2017 WL 633045, at *21 (D. Colo. 2017).

[26] In *Neal*, the plaintiff received notice of the specific conduct he allegedly committed (non-consensual sexual intercourse) and the alleged victim, and the plaintiff's complaint recounted meetings wherein he had discussions about the allegations with the investigator. In dismissing the notice issue, the court relied on the Tenth Circuit's decision in *Watson*, which also does not dictate dismissal here. In *Watson*, the Tenth Circuit found, *on summary judgment*, that the plaintiff had notice of the charges against him "despite the inadequacy of the written notice provided." *Watson*, 242 F.3d at 1241. There, the Tenth Circuit determined that the undisputed facts showed that the plaintiff received "adequate oral notice of the charges" and that he understood what the hearing was about. *Id*. Neither *Neal* nor *Watson* persuade the Court that VanNahmen's procedural due process claim should be dismissed.

[27] In its original motion, DCCC cites the four-prong test set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). VanNahmen claims that the proper test is the three-prong test from *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). DCCC does not address which test the Court should apply in its reply, but alleges that under either test VanNahmen's claim fails because he has not adequately alleged facts to satisfy the causation element of his claim. It is unnecessary for the Court to determine which test applies, because DCCC's arguments rely on facts not contained in VanNahmen's Complaint and which the Court may not properly consider on a motion to dismiss. The Court declines to convert DCCC's motion to one for summary judgment.

VanNahmen's "Complaint establishes that he was suspended due to his threatening behavior," that he "concedes that his conduct left Dr. Nolte feeling threatened," and that "at the hearing [VanNahmen] presented no evidence, including his own testimony, to indicate that the perception of Dr. Nolte and others that his conduct had been threatening was in any way erroneous." It also proffers that "Defendant's intent in implementing any adverse action against plaintiff was motivated by an intent to ensure that the college could function effectively without its employees worrying about their safety." DCCC's arguments again disregard the legal standard applicable to motions to dismiss.

On a motion to dismiss, the Court must accept as true the factual allegations contained in a plaintiff's complaint and must view the facts in the light most favorable to the non-moving party, here, VanNahmen. VanNahmen's Complaint does not concede that he engaged in threatening behavior, does not concede that Dr. Nolte felt threatened,[28] and does not contain facts regarding the evidence or lack thereof presented at the conduct review hearing. DCCC's arguments on this claim lack merit.

VanNahmen asserts that (1) he met with Dr. Nolte, the president of DCCC, on December 5, 2016, to express his displeasure about a proposal for DCCC to sell land for retail development, (2) he attempted to deliver a letter demanding Dr. Nolte's resignation on December 8, 2016, and a security officer informed him that Dr. Nolte was unavailable but agreed to deliver the letter for him, and (3) on December 10, 2016, VanNahmen received a letter temporarily suspending him from DCCC pending a conduct review hearing and prohibiting him from appearing on DCCC's campus except to take a previously scheduled final exam. Thus, just days after VanNahmen

---

[28] It merely notes that Dr. Nolte's *position* is that he felt threatened.

allegedly engaged in speech protected by the First Amendment, DCCC suspended VanNahmen and prohibited him from entering campus other than to take a final exam. DCCC eventually suspended VanNahmen for four years based on his alleged conduct on December 5 and 8. VanNahmen has sufficiently pleaded facts to support a claim that DCCC retaliated against him in violation of the First Amendment. Accordingly, DCCC's motion to dismiss VanNahmen's First Amendment retaliation claim is denied.

## C. Judicial Review

VanNahmen's claim for "judicial review" merely states: "This matter having been fully adjudicated at the administrative level, plaintiff asks that this Court exercise judicial review over DCCC's student disciplinary proceedings involving him." This appears to be a jurisdictional statement that does not state a separate claim for relief. To the extent VanNahmen seeks to pursue an action separate from his procedural due process and First Amendment retaliation claims, he has failed to provide DCCC with fair notice of the nature of the claim or the grounds on which it rests.[29] Accordingly, the Court dismisses Count III for failure to state a claim upon which relief may be granted.

## IV. Conclusion

DCCC's motion to dismiss relies on facts not asserted in VanNahmen's Complaint and which the Court cannot consider on a motion to dismiss without converting it to a motion for summary judgment. The Court declines to convert DCCC's motion to dismiss to a motion for summary judgment. Because VanNahmen has adequately pleaded his causes of action under § 1983 for a procedural due process violation and for First Amendment retaliation, the Court

---

[29] *See Robbins*, 519 F.3d at 1248 (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

denies DCCC's motion to dismiss as to Counts I and II of VanNahmen's Complaint. The Court, however, grants DCCC's motion to dismiss Count III of VanNahmen's Complaint, as his claim for "judicial review" fails to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that DCCC's Motion to Dismiss (Doc. 6) is hereby **GRANTED IN PART** and **DENIED IN PART**, as stated herein.

**IT IS SO ORDERED.**

Dated this 7th day of August, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE