THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LYLE VANNAHMEN,                          )
                Plaintiff,            )
                                    )
        vs.                              )          CASE #: 17-cv-1174
DODGE CITY COMMUNITY COLLEGE       )
               Defendant          )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS**
**MOTION FOR SUMMARY JUDGEMENT**

**INTRODUCTION**

Plaintiff alleges that defendant Dodge City Community College (hereafter DCCC) deprived him of liberty and or property without due process of law in connection with a student disciplinary proceeding held on April 25, 2017. Plaintiff also alleges that the disciplinary proceeding was retaliation for expressing his opinions in violation of his First Amendment right to free speech.

Plaintiff's claim is barred by the fact that the hearing of which he complains was appealable and the claims he asserts herein could have been asserted in that proceeding.

Plaintiff was afforded all of the process due him in connection with the disciplinary proceeding, as a matter law.

The evidence does not support a First Amendment retaliation claim as a matter of law.

**STATEMENT OF FACTS**

1.      Plaintiff was a student enrolled at DCCC. (ECF Document 1, ¶ 5.)

2.      On or about December 5, 2016, plaintiff met with DCCC's President, Dr. Nolte, in Dr. Nolte's office. (ECF Document 28, Pretrial Order Stipulation, § 2.a.2.)

3.      Plaintiff attempted to meet with Dr. Nolte again on December 8, 2016.  (ECF Document 28, Pretrial Order Stipulation, § 2.a.3.)

4.      When plaintiff attempted to meet with Dr. Nolte on December 8, security was placed on alert.  (ECF Document 1, ¶ 6.)

5.      On December 12, 2016, plaintiff was served a notice of violation of the Student Code of Behavior and informed that a hearing would be provided.  (VanNahmen Depo., 141:13-22 and Ex. 4; ECF Document 28, Pretrial Order Stipulation, § 2.a.4.)

6.      On March 5, 2017, plaintiff was sent a notice of hearing that he considers the charging document. (ECF Document 1,¶ 9; ECF Document 1-3; VanNahmen Depo., 162:17-23 and Ex. 6, Notice of Disciplinary Hearing and charges .[1])

7.      Plaintiff knew when he received the charging document (VanNahmen Depo., Ex. 6) that the  hearing was going  to be about his conduct on December 5 and December 8. (VanNahmen Depo., 170:4-16.)

8.      Plaintiff knew that the charging document  (VanNahmen Depo., Ex. 6) was talking about his encounter with Dr. Nolte on December 5, 2016, and his attempt to talk to Dr. Nolte on December 8. (VanNahmen Depo., 171:3-7.)

9.      On January 12,  2017, Plaintiff's first attorney, Andrew Stein, was provided a copy of the reports and statements of the witnesses except for Carla Patee.  (Temaat Affd., ¶ 2.)

10.      On February  27, 2017, a pre-hearing conference was held with Mr. Stein. (Temaat Affd., ¶ 3.)

---

[1]  The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, § 2.b.2.)

11.     During the pre-hearing conference  with Mr. Stein, on February 27, 2017 the details of the events out of which the charges arose were discussed. (Temaat Affd., ¶ 4.)

12.      It was explained to Mr. Stein in the February pre-hearing conference that Dr. Nolte feared for his safety and felt intimidated and threatened during the meeting in his office on December 5, 2017.  (Temaat Affd., ¶ 4.)

13.     At the February pre-hearing conference, the  changes that had been made to security as a result of Mr. VanNahmen's conduct were discussed.  (Temaat Affd., ¶ 4.)

14.     The possible sanctions that could be imposed at the hearing  were also discussed with Andrew Stein on February 27, 2017.    (Temaat Affd., ¶ 5.)

15.     At the February pre-hearing conference, the parties went through the code of conduct's list of possible sanctions, including suspension.  (Temaat Affd., ¶ 5.)

16.     The hearing was set for March 8, 2017.  (Temaat Affd., ¶ 5.)

17.     On March 6, 2017, a new attorney – Peter Antosh – notified the college  that he had been hired and requested a continuance of the hearing to accommodate Plaintiff's request for a pre-hearing conference, to allow Plaintiff and his attorney more time to consider the evidence and prepare for the hearing. (Ex. A, E-mail exchange between Peter Antosh and Glenn Kerbs of March 6, 2017, regarding continuing the hearing[2]; VanNahmen Depo., 164:10-13; Temaat Affd.,¶ 6.)

18.     Mr. Antosh was furnished with the statements and reports of the witnesses, including Carla Patee's.  (Temaat Affd., ¶ 7.)

19.     At the request of Mr. Antosh, a second pre-hearing conference was held on March

_____

[2] The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, § 2.b.19).

24, 2017. ((ECF Document 28, Pretrial Order Stipulation, § 2.a.6; Temaat Affd., ¶ 8.)

20.     Prior to the pre-hearing conference, plaintiff's attorney had received copies of the statements of Carla Patee, Stephanie Lanning, Keith Thomas Steven Sites and Josh Thompson. (Temaat Affd., ¶ 7, 9.)

21.     Dr. Nolte did not prepare a written statement but testified live at the hearing. (Nolte Affd., ¶ 15; Temaat Affd., ¶ 10.)

22.     At the pre-hearing conference, the anticipated testimony of all of the witnesses, including Dr. Nolte's  was discussed.  (Temaat Affd., ¶ 10.)

23.     At the March pre-hearing conference, it was thoroughly discussed that the hearing would be Lyle VanNahmen's conduct at his meeting with Dr. Nolte on December 5, 2016, and his attempt to contact Dr. Nolte again on December 8, 2016.   (Temaat Affd., ¶ 11.)

24.     It was very clear at the March pre-hearing conference what conduct of Mr. VanNahmen the charges were based on and would be the subject of the hearing. (Temaat Affd., ¶ 11.)

25.     At the March pre-hearing conference, it was agreed that any appeal from the Judicial Hearing Board, which would normally go to the President, would be assigned to another administrator.  (Temaat Affd., ¶ 20.)

27.     At the March pre-hearing conference, plaintiff's attorney requested that the following witnesses be made available for questioning at the hearing:

       a      Carla Patee

       b.      Keith Thomas

       c.      Steven Sites

        d.     Josh Thompson

        e.     Stephanie Lanning.

        f.     Harold Nolte

(Temaat Affd., ¶ 13.)

28.     At the hearing on April 25, 2017, all of though witnesses were present, testified and were subject to cross-examination except for Keith Thomas.

(Temaat Affd. ¶ 13.)

29.     Mr. Thomas was out of state on the date of the hearing. Since he was not present and subject to cross-examination, his statement was not presented. (Temaat Affd. ¶ 13.)

30.     Plaintiff knew that the evidence that would be presented at the hearing would include the statements and the testimony of those witnesses.  (VanNahmen Depo., 180:20 thru 181:1.)

31.     Prior to the hearing, plaintiff personally received copies of the statements of Carla Patee, Stephanie Lanning, Keith Thomas and Josh Thompson.  (VanNahmen Depo., 178:18 thru 179:3, Ex. 7.)

32.     The statements plaintiff received before the hearing spell out that the witnesses were saying that they perceived plaintiff's conduct as intimidating and threatening.  (VanNahmen Depo., 179:4-7.)

33.     The Patee statement discusses Patee's version of plaintiff's visit to Dr. Nolte's office on December 5, 2016.  (VanNahmen Depo, Ex. 7, pgs 1- 2.)[3]

34.     The Patee statement states that Dr. Nolte was noticeably shaken and immediately

---

[3] The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.8.)

went to find Mr. Thomas, a school security guard.  (VanNahmen Depo, Ex. 7, pgs 1- 2.)

35.    The statement of the Director of Security – Josh Thompson – stated that, after the December 8 incident he changed security procedures, including moving his desk to the lobby of Dr. Nolte's office. (VanNahmen Depo, Ex. 7, pg 6.)[4]

36.    Plaintiff met with his attorney in advance of the hearing, reviewed the statements and prepared questions to ask the witnesses, including Dr. Nolte and Stephanie Lanning.  (VanNahmen Depo., 187:16-22; 188:17-25.)

37.    The hearing was held on April 25, 2017.   (ECF Document 28, Pretrial Order Stipulation, § 2.a.8.)

38.    Plaintiff attended the hearing accompanied by his attorney, who was permitted to advise him. (Temaat Affd. ¶ 14; Ex. E, Hearing Recording at 5:35 - 5:57 minutes.)

39.    Plaintiff's attorney was allowed to record the hearing on his I-pad.  (Temaat Affd., ¶ 14.)

40.    Plaintiff does not believe that there were any questions he should have asked the witnesses at the hearing that he did not ask.  (VanNahmen Depo., 189:3-6.)

41.    There were no questions that plaintiff was not allowed to ask of the witnesses at the hearing. (VanNahmen Depo., 189:7-10.)

42.    There was no evidence that plaintiff wanted to present at the hearing that he was not allowed to present.   (VanNahmen Depo., 189:11-14.)

43.    Plaintiff did not object to any of the evidence presented and does not contend that any

---

[4]  The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.12.)

improper evidence was considered. (VanNahmen Depo., 189:19 thru 190:9.)

44.     At the hearing, the College presented witnesses to testify to the actions of the

plaintiff in the meeting with Dr. Nolte on December 5 and its effect on Dr. Nolte. (ECF Document

28, Pretrial Order Stipulation, §  2.a.9;  Ex. E, Hearing Recording.)

45.     At the hearing, Dr. Nolte testified that he was concerned for his safety and felt

threatened by plaintiff during the encounter on December 5.  (Temaat Affd. ¶ 18;  Ex. E, Hearing

Recording at 33:12 - 33:14 minutes.)

46.     At the hearing Dr. Nolte testified that plaintiff scared him during the encounter

on December 5.  (Ex. E, Hearing Recording at 34:06 - 34:10 minutes.)

47.     At the hearing,  Dr. Nolte testified that the encounter on December 5 caused him to

consider obtaining additional security at his home. (Temaat Affd. ¶ 18;  Ex. E, Hearing Recording

at 34:25 - 34:31 minutes.)

48.     At the hearing Carla Patee testified that, following plaintiff's meeting

with Dr. Nolte  on December 5, Dr Nolte appeared noticeably shaken and went immediately to find

the security guard.  (VanNamen Depo., Ex. 7, p. 2, ¶ 4;  Ex. E, Hearing Recording at 36:51 - 36:59

minutes.)

49.     The security director  testified that, as a result of plaintiff's behavior, he had concerns

for  Dr. Nolte's safety and changed security procedures including putting his desk just outside  Dr

Nolte's office.   (VanNahmen Depo., 191:9-22, Ex. 7, p. 6;  Ex. E, Hearing Recording at 43:32  -

43:38 minutes.)

50.     At the hearing, plaintiff was advised by the presiding officer that one of the most

important parts of the hearing was his opportunity to explain what he did or did not do and provide any information he wanted to provide about whether or not he had been intimidating and threatening. (VanNahmen Depo. 192:3-18; Ex. E, Hearing Recording at 11:20 - 11:51 minutes.)

51.     At the hearing plaintiff was advised by the presiding officer that it would be helpful to explain his conduct from his point of view and to explain what he intended to do with his education if he were allowed to continue at the College.  (Ex. E, Hearing Recording at 13:38 - 13:57 minutes.)

52.     Plaintiff presented no witnesses at the hearing.  (ECF Document 28, Pretrial Order Stipulation, § 2.a.10.)

53.     Plaintiff did not testify at the hearing. (ECF Document 28, Pretrial Order Stipulation, § 2.a.8.)

54.     Plaintiff could have provided testimony from himself about what did or did not happen in Dr. Nolte's office on December 5, but did not.   (VanNahmen Depo. 193:16-21.)

55.     Plaintiff did not tell the hearing committee that any of  the statements of the witnesses were not correct.  (VanNahmen Depo., 194:3-5.)

56.     At the hearing, one of the committee members asked plaintiff if he was going to tell them his side of the story and plaintiff declined to do so. (VanNahmen Depo.,195:4-11; Ex. E, Hearing Recording at 59:42 - 1:00:36 minutes.)

57.     Plaintiff knows of no additional person  that would have attended the hearing if it had been open to the public.    (VanNahmen Depo., 200:8-12.)

58.     The Judicial Hearing Board that heard Lyle VanNahmen's case on April 25, 2017, consisted of two tenured faculty and the Director of Residence Life. (Temaat Affd., ¶ 16.)

59.     The tenured faculty had statutory contracts with the Board of Trustees and their

contracts can only be terminated or non-renewed by the Board of Trustees, and that decision is subject to review in the Kansas courts pursuant to statute.  (Temaat Affd., ¶ 16.)

60.     One of the tenured faculty Board members had already submitted his retirement papers.  (Temaat Affd., ¶ 16.)

61.     The Judicial Hearing Board had the discretion to investigate the facts, weigh the evidence presented and form its own independent findings as to whether the conduct violated code and what sanctions should be imposed.  (Temaat Affd., ¶ 17.)

62.     The Judicial Hearing Board panel found the plaintiff had exhibited behavior that threatened harm to a college employee, conducted himself in a disorderly manner and demonstrated, threatened interference and intimidation towards college employees. (Temaat Affd., ¶ 19; Ex. B, Hearing Disposition Letter.)[5]

63.     The Judicial Hearing Board imposed a sanction of four years suspension and trespass from DCCC and its property.   (Temaat Affd., ¶ 19;  Ex. B,  Hearing Disposition Letter.)

64.     Plaintiff received a letter from Dr. Temaat confirming in writing the disposition of the hearing and stating that his conduct violated the Code of Conduct.  (ECF Document 28, Pretrial Order Stipulation, § 2.a.12;  Ex. B, Hearing Disposition Letter. )

65.     Plaintiff timely appealed the hearing decision. (Ex. C, Notice of Appeal to Administrator;[6] ; ECF Document 28, Pretrial Order Stipulation, § 2.a.13.)

66.     The appeal was considered by The Dean of Workforce Development & Title V,

------

[5]   The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.5.)

[6]   The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.6.)

Ryan Ausmus, who upheld the decision and sanctions. (Ex. D, Administrator's ruling on appeal;[7] ECF Document 28, Pretrial Order Stipulation, §  2.a.14; Ausmus Affd., ¶ 5.)

67.     Mr. Ausmus had the authority to uphold, reverse or modify the Board's disposition. (Ausmus Affd., ¶ 4).

68.     Plaintiff did not seek review pursuant to K.S.A. 60-2101(d).  (Temaat Affd., ¶ 22.)

69.     Plaintiff has stipulated that he has no basis for contending that the hearing panel was not impartial, other than they were employees of the college.  (VanNahmen Depo., 185:11 thru 186:13.)

70.     The "charging document" advised plaintiff that the possible penalties that could be imposed could be found on pages 77-84 of the student handbook. (ECF Document 1-3, ¶ 5.)

71.     Page 84 of the student handbook states one of the possible sanctions could be suspension from the college for a specified period of time.  (VanNahmen Depo., Ex. 1, pg 5.) [8]

72.     Plaintiff reviewed the handbook pages setting out the potential range of sanctions, including suspension. (VanNahmen Depo., 164: 14 thru 166:24.)

73.     Plaintiff can identify no way in which he was harmed by the delay in sending him the letter informing him of the Judicial Hearing Board's decision.  (VanNahmen Depo., 195:17 thru 196:24.)

74.     Plaintiff has never heard anyone associated with DCCC indicate that they were upset

---

[7]  The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document  28, § 2.b.7).

[8]  The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, § 2.b.10).

with him because he opposed the land sale, requested Dr. Nolte's resignation or was opposed to the purchase of the dome.   (VanNahmen Depo. 209:22 thru 210:15.)

75.     At the meeting with plaintiff on December 5, Dr. Nolte became concerned for his safety because of plaintiff's demeanor and behavior.  (Nolte Affd, ¶ 11; Ex. E, Hearing Recording, 29:25-29:40 minutes.)

76.     Dr. Nolte has a degree in counseling and a background in sociology and psychology. (Nolte Affd., ¶ 3.)

78.     Dr. Nolte has been in higher education for 38 years and is very experienced with situations involving public controversy. (Nolte Affd., ¶ 2.)

79.     Other students and employees, as well as members of the public shared Mr. VaNanhmen's opposition to the land sale.  (Nolte Affd., ¶ 14.)

80.     Dr. Nolte had no problem with plaintiff expressing opposition to the land proposal or requesting Dr. Nolte's resignation.  His only concern was with the threatening and intimidating demeanor and behavior.  (Nolte Affd., ¶ 14.)

## ARGUMENTS AND AUTHORITIES

**I.     This case is barred by *res judicata* and full faith and credit.**

"Federal courts must give a state court judgment the same preclusive effect as would the originating state." *Id.; Allen v. McCurry,* 449 U.S. 90, 96 (1980); 28 U.S.C. § 1738; *Spencer v. U.S.D. No 501,* 1997 WL 614329 (D. Kan. 1997).  This applies to preclude claims under 42 U.S.C. §1983.  *Allen v. McCurry*, 449 U.S. at 105.  This precludes not only re-litigation of issues raised in the prior action but also precludes litigation of issues that could have been raised in the prior action. *Campbell v. City of Spencer,* 777 F.3d 1073, 1077 (10th Cir. 2014.)

11

Under Kansas law, the decision of the Judicial Hearing Board and the Review Officer, could have been appealed to the district court, K.S.A. 60-2101(d).  Both of the issues raised in this case could have been raised in that proceeding.  The decision of the Board and Review Officer is a final judgement that precludes a collateral attack by an independent action like this one. This even applies when the argument in the second action is that due process was denied in the first action.  And it applies to other constitutional claims that could have been raised in the first action.

### A.      Plaintiff had the right to appeal under K.S.A. 60-2101(d)

"A judgement rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal."  K.S.A. 60-2101(d).

Community Colleges in Kansas are political subdivisions.  *Bland v. Kan. City Comm. College,* 271 F. Supp. 2d 1280 (D. Kan. 2003.) *See also,* K.S.A. 12-105a(a) (Defining "municipality" to include community colleges); *Rockers v. Kansas Turnpike Authority,* 268 Kan.110, 115 (1999).

"The term 'quasi-judicial' is applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of a judicial nature."  *Thompson v. Amis,* 208 Kan. 658, Syl. 6, 663 (1972.) *Rately v. Sheriff's Civil Service Bd,* 7 Kan. App. 2d 638, 641 (1982.)

The due process hearing afforded to plaintiff by the Judicial Hearing Board, and its review by the administrator were a quasi-judicial proceeding appealable under K.S.A.  60-2101(d).  *See In Re Bybee*, 236 Kan. 443 (1984) (decision of college committee to deny instate tuition appealable under 60-2101(d)); *Herrmann v. Bd of Educ. of U.S.D. No. 256,* 2002 WL 31498983 (D. Kan. 2002) (student suspension determination appealable under 60-2101.)  The hearing conducted by the Judicial

Hearing Board provided procedures similar to those of a judicial proceeding.  Witnesses were presented and subject to cross-examination. Exhibits were presented.  Arguments were permitted. The Judicial Hearing Board then deliberated and exercised discretion of a judicial nature in determining whether a violation had occurred and the sanction to be imposed.  The decision was then appealed to review officer who reviewed the tape of the hearing and the evidence provided and exercised discretion of judicial nature in determining whether to affirm, reverse or modify the findings of the Judicial Hearing Board  or the sanctions it imposed.  ( SOF 44-49.) The hearing panel had the discretion to investigate the facts, weigh the evidence and draw conclusion.  (SOF 61).

> **B.**   **When appellate review under K.S.A. 60-2101  is available, it is exclusive.**

"If the district court had appellate jurisdiction, then it had no jurisdiction in an independent equitable action to review alleged errors."  *Thompson v. Amis,* 208 Kan. 658, Syl. 5, 662 (1972.) "That being the case , the procedure for appellate review in the district court provided by K.S.A. 60-2101(a) [now (d)] was exclusive. . .."  *Id.* at 663.  When a quasi-judicial decision appealable under K.S.A. 60-2101(d) – or similar statute – is not appealed, the decision must be given preclusive affect and may not be collaterally attacked by an independent action. *Schulze v. Board of Education.,* 221 Kan. 351 (1977).   This preclusive effect applies to unreviewed administrative decisions that could have been reviewed under 60-2101.  *Spielman v. City of Newton,* 1997 U.S. Dist LEXIS 11829 (D. Kan. 1997.)

In Kansas, this is subject matter jurisdictional.   The facts of *Thompson* are particularly instructive in that regard.  In that case, like the present case, the plaintiff was alleging that she had been denied due process by the underlying quasi-judicial proceeding.  Unlike this case, all parties initially *agreed* that the proper remedy was an independent action, not an appeal.  The District Court

agreed and proceeded to find that plaintiff had been denied due process and entered judgment in her favor. Nevertheless, the Kansas Supreme Court held that the exclusive remedy was an appeal and that, therefore, the courts lacked subject matter jurisdiction of the independent action. The judgment in favor of the plaintiff was reversed.

Federal courts have recognized and applied these principals in a case much like this one involving the suspension of a student who attempted to later bring an action under 42 U.S.C. § 1983 alleging a violation of due process. *Spencer v. U.S.D. No. 501,* 1997 U.S. Dist. LEXIS 15444 (D. Kan. 1997.) That case was dismissed.

Moreover, this preclusive effect applies to constitutional claims other than a Fourteenth Amendment due process claim. *Spielman v. City of Newton,* 1997 U.S. Dist. LEXIS 11829, * 24-25 (D. Kan. 1997) (holding that a claim under the Fourth Amendment that could have been raised in the administrative proceeding was precluded.)

Plaintiff's first amendment claim – that the charges were made in retaliation for exercising his First Amendment rights – could have been raised before the Judicial Hearing Board, and the Kansas Courts on appeal under K.S.A. 60-2101(d). He is, therefore, precluded from raising it in this action.

Therefore, both of plaintiff's remaining claims must be dismissed as precluded by the previous proceeding and the right to appeal to the Kansas Courts.

## II. Plaintiff received due process.

If the court were to address the merits of plaintiff's due process claim, the uncontroverted facts show that he was given all process that was due.

Plaintiff alleges ten ways in which he claims the due process proceedings were insufficient to meet the minimum due process requirements of the Fourteenth Amendment:

1.    The initial committee and the subsequent administrative reviewer were not impartial because they were employees of the college;

2.    A written report of one witness was not provided to;

3.    He was not told for certain whether two of the witnesses would be available at the hearing;

4.    His attorney was not permitted to examine witnesses;

5.    The hearing was not open to the public;

6.    The charging document was insufficient to give him fair notice of the claims against him;

7.    He was given insufficient notice of the potential penalties;

8.    The decision of the committee did not contain sufficient findings of fact;

9.    His initial suspension was "ex parte";

10.    There was a delay between when the memorandum containing the Committee's decision was prepared and when it was delivered to him.

The discovery record supports none of these claims.

### A.    Plaintiff has alleged no protected liberty interest.

The first required element of a due process claim is that plaintiff had a protected property or liberty interest. *Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275, 1289 (D. Kan. 2014.)  "The requirements of procedural due process apply only to the deprivation of interest encompassed by the 14th amendment's protection of liberty and property."  *Bd of Regents v. Roth,* 408 U.S. 564, 569

(1972.)  Plaintiff has conceded that his Complaint asserted no deprivation of a protected liberty interest.  (ECF No. 9, p. 12, Argument and Authority, § I. a.)   He is  alleging only deprivation of property interest.

It is questionable whether plaintiff has pled a property interest.  In order to have a property interest, a person must have more than a unilateral expectation but a legitimate claim of entitlement. *Roth,* 408 U.S. 564 at 577.  Whether a student at a Kansas community college has a property interest in being permitted to re-enroll in a subsequent semester has never been decided.  The United States Supreme Court has found a protected property interest in continued enrollment in a school.  *See, Goss v. Lopez,* 419 U.S. 565, 574 (1975.)   The Tenth Circuit, based on various state laws, has found that, in appropriate circumstances, right to continued enrollment in a school may be a property interest. *See Lemon v. Labette Cmty. College,* 6 F. Supp. 3d 1246, 1251 (D. Kan. 2014) (summarizing various cases.) This *C*ourt has found an entitlement to continued enrollment in law school.  *Brown, supra.* Frequently, it is simply assumed that center-right may exist.  However, a full exploration of this issue will require discovery into such matters as whether tuition payments were made, college policies, etc. Therefore, for purposes of this motion, defendant will assume such a property right exists but reserves the right to contest that issue should further proceedings be necessary.

### B.  Plaintiff's right to due process was not violated.

The Constitution does not forbid deprivation of property by DCCC. It only requires that the individual be afforded an appropriate level of process in connection with  the deprivation.  *See, Baker v. McCollan,* 443 U.S. 137 (1979); *Farthing v. City of Shawnee,* 39 F.3d 1131, 1135 (10th Cir. 1994); ECF Document 27, p. 6.

The appropriate level of process for disciplinary dismissals of a student does not require a formal hearing.  All that is required is that a plaintiff be advised of his deficiencies in any form, an explanation of the evidence against him, and an opportunity to present his side of the story.  *See Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275, 1289 (D. Kan. 2014.)

First, harking back to Section I of this memorandum, as a general proposition, due process was afforded.  Even if errors were committed in the process provided by way of the Judicial Hearing Board, the due process provided, included an avenue for reviewing and correcting those errors – appeal to the courts.  Thus, even if some of the specific alleged deficiencies cited by plaintiff were, in fact deficiencies, over all, plaintiff has been provided due process including the right of review to correct such deficiencies.  Having failed to avail himself of the due process that was provided, plaintiff now improperly brings this collateral attack seeking to nit pick the steps along the way that may not have been perfect.  Every deficiency that plaintiff raises here could have been raised and considered before the Judicial Hearing Board and reviewed by the Kansas Courts.  That is sufficient to meet due process.

But even if the court should choose to abandon the big picture and analyze each alleged deficiency, the uncontroverted facts show that the requirements of due process were met.

**First**, plaintiff alleges that the hearing panel and administrative reviewer were not impartial. But the only fact he claims to support this claim is that they were employees of the college. (SOF 69.) The Tenth Circuit has already rejected this argument, holding that a university hearing panel comprised of employees of the university does not in of itself indicate an impartial tribunal. *Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 519-520 (10th Cir. 1998.)   In *Tonkovich*, the Chancellor's office of the University of Kansas charged the plaintiff with moral turpitude and

recommended that he be dismissed.  Subsequently, the plaintiff was allowed to defend himself before

a hearing committee comprised of employees of the University and subordinates of the Chancellor.

*Tonkovich* at 519.  The plaintiff in *Tonkovich* claimed that his due process rights were violated due

to the composition of the hearing committee.   However, the Court in *Tonkovich* rejected the

plaintiff's claim and held the plaintiff's allegation to be conclusory;  no facts were stated that would

support a conclusion that any of the members were biased, had a personal or financial stake in the

decision, or held personal animosity against the plaintiff.  *Id.*

In this case, plaintiff does not even attempt to make any allegations of a personal or financial

stake.  Moreover, the facts show that the Judicial Hearing Board Members included two tenured

faculty with statutory contracts that could be terminated or non-renewed only by the Board of

Trustees and that decision would be subject to review by the Kansas courts.  (SOF 58-59.)  *See also*

K.S.A. 72-2252, *et. seq.*  Administrator's contracts are also terminated or non-renewed by the Board

of Trustees and certain due process protections are afforded to them as well. *See,* K.S.A. 72-2285, *et.*

*seq.* One of the hearing panel members had already submitted his retirement papers, leaving him with

nothing to fear for his job  from the board or the President. (SOF 60.)

Like the plaintiff in *Tonkovich*, this plaintiff has failed to show that the hearing he was

afforded was not presided over by impartial fact-finders.

**Second**, plaintiff  alleges that a written statement of one witness – Dr. Nolte –  was not

provided to him.  However, there was no such statement to provide as none was ever written.  (SOF

21.)  There is no legal requirement that written statements be prepared in advance and provided.

Moreover, the uncontroverted facts show that the lack of such a report had no adverse effect on the

hearing.  Both of Plaintiff's attorneys had pre-hearing conferences at which the expected testimony

of the witnesses was fully discussed.  (SOF 11,12, 22, 23.) Plaintiff was able to meet with his attorney and prepare questions to ask in advance of he hearing, including questions for Dr. Nolte. (SOF 36.) There are no questions that he should have asked but did not get to.  (SOF 40-42.)  He was, therefore, not denied a meaningful opportunity to be heard.

**Third**, plaintiff  alleges that he was not told for certain whether two of the witnesses would be available for his hearing.  But he was told of all the witnesses that could be called, including those two. He was further told the college would endeavor to have the two witnesses present, at his request, and they in fact appeared. He admits that he was able to prepare to cross-examine them and did. There are no questions he  should have asked that he was not prepared to ask because he did not know for *certain* that they would appear.  (SOF 40-42.)  This minor uncertainty had no adverse impact on his meaningful opportunity  to be heard.

**Fourth**, plaintiff complains that his attorney was not allowed to participate in cross-examining witnesses.  Students are not necessarily entitled to have counsel participate in more than an advisory role during student disciplinary hearings at universities.  This is a topic in which there is also a lack of case law within the Tenth Circuit.  However, the trend in most circuits that have spoken definitively on the issue is that,  at most,  a student has a right to get the advice of the lawyer but the lawyer need not be allowed to participate in the proceeding in the usual way of a trial lawyer, as by examining and cross-examining witnesses and addressing the tribunal.  See *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir. 1993) (citing as additional examples *Newsome v. Batavia Local School Dist.*, 842 F.2d 920, 925-26 (6th Cir. 1998) and *Gorman v. University of Rhode Island*, 837 F.2d 7, 16 (1st Cir. 1988.))

In this case, plaintiff's attorney was present and allowed to advise  him at the hearing.

(SOF 38 .)

**Fifth**, plaintiff complains that the hearing was not open to the public.  Defendant can find no

binding precedent addressing this question.  However, there is nothing in the Supreme Court or Tenth

Circuit precedents concerning the requirements of due process hearing that even hint at a suggestion

that such a hearing must be open to the public.  Particularly when, as here, plaintiff was permitted to

audiotape the entire proceeding.  It is difficult to imagine a scenario were the basic requirements of

due process – notice of the charges and evidence against him and an opportunity to present his side

of the story –  is in any way impacted by the fact that the hearing was not open.  Moreover, plaintiff

has admitted that there was no one excluded form the hearing that would have attended if it had been

open.  (SOF 57.)  It, therefore, had not impact on the proceeding or his right to an opportunity to a

meaningful hearing.

**Sixth**, plaintiff complains that he received insufficient notice of the charges against him.

While the "charging document" may not, itself have been completely enlightening, other information

given orally was sufficient.  The notice necessary to satisfy due process can be either oral or written.

*Goss v. Lopez,* 419 U.S. 565, 581 (1975); *Watson v Beckel,* 242 F.3d 1237, 1240-41 (10th Cir. 2001.)

All that is required is that the notice provide a meaningful opportunity to be heard.  *Id,* at 1241. The

court balances three factors: 1) the private interest affected by the action, 2) the probable value of

additional safeguard, and the government's interest that the additional safeguard would entail. *Id*.

The uncontroverted facts of this case show that plaintiff was given a meaningful opportunity

to be heard and that putting more in the writing would have provided no value.  Long before the

hearing, plaintiff was made fully aware of the charges against him, the witnesses who would be

presented, what they would say and the exhibits that would be presented. He was given written

statements from most of the witnesses setting forth what they were going to say. (SOF 9-14, 18-24, 30-36.)  At his request, a pre-hearing conference was held and the charges and evidence discussed. (SOF.)   Plaintiff admits that he was able to meet with his attorney and prepare questions to ask in advance of the hearing.  There are no questions that he should have asked but did not get to.  Nothing was offered at the hearing that plaintiff did not know was going to be offered.

As in *Watson,* because plaintiff  "already knew the allegations he faced, he would have received little or no benefit from a written notice that specified the charges against him . . . requiring such notice in addition to oral and constructive notice was not necessary to ensure a fair proceeding." 242 F.3d at 1241.

**Seventh**, plaintiff complains that he was not given adequate notice of the potential penalties. Notice of potential penalties is not a required element of due process. *Trujillo v. Toas Mun. Sch.,* U.S. App. LEXIS 15938 at *6 (10th Cir, 1996.)

But even if it was, the uncontroverted facts show that he was given all the  notice that could be given of the range of penalties that the Judicial Hearing Board Complaint, could impose.  He was pointed to the specific pages of the Code of Conduct that set forth the potential penalties from which the Board could select (SOF 70- 72.)  Each possible sanction was gone over with Plaintiff's attorney in the First pre-hearing conference.  (SOF 14.)

**Eighth**, plaintiff complains that the committee's decision contained insufficient findings of fact. In analyzing this claim, it is important to return to the guiding rule that the "due process" does not consist of rigid rules.  It is an "intensely  practical" analysis and the goal is provide a meaningful opportunity to be heard.   *See Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275, 1289 (D. Kan. 2014.) The purpose of sufficient findings is to allow meaningful review.

The uncontroverted facts show that plaintiff was afforded a meaningful opportunity to be heard and meaningful reviews.  A tape recording was made of the hearing,  reviewed by the Review Officer and was available for review by the courts, had plaintiff chosen to appeal.   Moreover, the evidence was entirely one sided.  Plaintiff presented no evidence or even an argument in opposition to the evidence of the College's witnesses. There were only two witnesses to the plaintiff's conduct in the December 5 meeting with Dr. Nolte and only one of them testified.  That testimony was supported by Ms. Patee's testimony that Dr. Nolte appeared noticeably shaken and the reaction of the Security Director implementing new procedures. Plaintiff did not even bother to tell the Judicial Hearing Board that any of the statements of the witnesses was incorrect.  (SOF 55.)  There was only one finding that could be made from the evidence.

The letter setting forth the Judicial Hearing Board's  findings specifically stated that it had found that plaintiff had exhibited behavior that threatened harm to college employees and was disorderly. Given the evidence presented, that could only refer to his conduct toward Dr. Nolte on December 5 as described by Dr. Nolte and his conduct on December 8 as described by the witnesses.

 Even  if the letter was not sufficient alone, it is when coupled with the record.   In the Tenth Circuit, a transcript of disciplinary hearings constitutes an adequate substitute for written findings. *See Smith v. Maschner*, 899 F.2d 940, 956 (10th Cir. 1990).   The tape is particularly sufficient in this case since the evidence at the hearing was uncontradicted and susceptible of only one conclusion. It is simply  unreasonable to argue that plaintiff lacked sufficient notice of what the findings were on this record.

**Ninth**, plaintiff alleges that the suspension he received on December 12, 2016 without a prior hearing was a violation of due process.  Plaintiff mis-characterizes a trespass notice as a suspension.

The property right he alleges in this case is the right to continued enrollment at the college. The notice clearly indicates the plaintiff is not being suspended from the college.  He was specifically authorized to be on campus to attend classes and take his final exam.  (SOF 5; Ex. 4.)  All that occurred was that he was *temporarily*, forbidden to loiter on the campus.

The Tenth Circuit has held that there is no protected property interest in participating in any specific school sponsored activity. *Seamons v. Snow,* 84 F.3d 1226, 1235 (10th Cir. 1996); *Albach v. Odle,* 531 F.2d 983 (10th Cir. 1976).  *See also Lien v. Edmonds,* 1996 U.S. Dist. LEXIS 20079, fn 9 (D. Kan. 1996) ("although public education is a constitutionally protected right, ...participation in interscholastic athletics is not.") Another instructive case is *Johnson v. Western State Colorado University*, 71 F. Supp. 3d.  1217 (D. Colo. 2014.)   In that case, the plaintiff/student was temporarily suspended from participating in school-sponsored activities and disallowed to continue serving as a teaching assistant despite receiving academic credit for such activity.  The court found that, under the Tenth Circuit cases cited above, there had been no deprivation of a protected interest and dismissed the Complaint for failure to state claim.  71 F. Supp. 3d.  at 1227-28.

The trespass notice in this case was tailored in a manner that permitted plaintiff to still obtain credit regarding the course he was enrolled in.  Because he was allowed to finish his education, he was not deprived of the property interest in continued enrollment without a hearing.

**Tenth**, plaintiff complains that the apparent delay between when the Board's decision was written and when it was delivered to him constitutes a due process violation.  But he admits that no deadline was running during the delay or that he was unable to timely seek review.  In fact, he affirmatively alleges he did seek timely review.  He further can identify no way in which the delay harmed him.  (SOF 73.)   There is simply no legal support for the proposition that a written decision

must be delivered immediately.  Certainly plaintiff cannot show that this delay negatively impacted his right to be heard.

In summary, plaintiff was clearly provided all required due process in connection with his threatening and intimidating conduct towards Dr. Nolte.

**II.      Plaintiff's First Amendment rights were not violated**

In order to establish a claim for free speech retaliation, plaintiff must be able to show that  1) he engaged in protected activity, 2) defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from engaging in that activity and 3) the defendant's conduct was substantially motivated as a response to his protected activity.  *Mocek v. City of Albuquerque,* 813 F.3d 912, 930 (10th Cir. 2015).

DCCC concedes that merely stating an opinion about the land sale and whether the president should resign would be protected activity.  But that was not all he  did. Threatening and intimidating Dr. Nolte and causing him to be concerned for his own safety is not protected activity.  *See Smith v Nelson,* 618 Fed. Appx. 436  (10th Cir. 2015): *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir 2016) (professors faced with a student asking  hostile questions in their offices while videotaping could reasonably become concerned for their safety and discipline of the student for this conduct was permissible).

It has already been established that plaintiff engaged in intimidating and threatening behavior. As discussed in Section I of this memorandum, the findings of the Judicial Hearing Board and Review Officer that were not appealed are now binding.

Given that plaintiff engaged in the threatening and intimidating behavior,  he cannot meet his burden of showing that protected activity was a substantial motivating factor the discipline imposed for the intimidating and threatening behavior.

Plaintiff has never heard anyone associated with the college indicate that they were upset with him for the opinions he voiced concerning the land sale, the dome or Dr. Nolte resigning. (SOF 74.)  In fact, other people, including other students and employees of the college  shared his view (SOF 79.)   And there is no evidence  that any of them were retaliated against or subjected to discipline. The only reasonable explanation for why the plaintiff was disciplined and others who expressed the same opinions without threatening and intimidating, is that the discipline was not motivated by the protected speech but by the unprotected threatening and intimidation.

Dr. Nolte did not have any particular investment in the proposal but had simply informed the Board of the opportunity if they wanted to take it.

Moreover, the suspension decision was made by an independent Judicial Hearing Board. Plaintiff was given a hearing on the issue of the manner in which he conducted himself.  Plaintiff concedes that he has no information that the members of the board had any issue with his expressed opinion – the only basis for his claim that they were impartial, is the fact they were employed by the college.  (SOF 69.)

At the hearing, plaintiff did not raise this assertion that the charges were fabricated in retaliation for the substance of his position on the land sale – he did not even tell the Judicial Hearing Board any of the witnesses statements about his demeanor and their reaction to it was in. (SOF 55.)

There are simply no facts to support the allegation that the substance of plaintiff's opinions, rather than his threatening conduct, was the cause of his suspension.  His allegation is nothing but raw speculation.

## CONCLUSION

For the foregoing reasons, all of plaintiff's claims must be dismissed.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/    ALLEN G. GLENDENNING
    Allen G. Glendenning , #12187
    1321 Main - Suite 300
    P.O. Drawer 1110
    Great Bend, Kansas  67530
    (620) 792-8231; aglenden@wcrf.com
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2018, I electronically filed the above and foregoing Memorandum in Support of Motion for Summary Judgment by using the CM/ECF system which will send a notice of electronic filing to the following:  Peter Antosh

/s/      ALLEN G. GLENDENNING
    Allen G. Glendenning, #12187

**EXHIBIT  INDEX**

| Exhibit | Description | Means of Filing |
|---|---|---|
| EXHIBIT A | Email | Electronic Attachment |
| EXHIBIT B | Disposition Letter | Electronic Attachment |
| EXHIBIT C | Notice of Appeal | Electronic Attachment |
| EXHIBIT D | Appeal Order Affirming Decision | Electronic Attachment |
| EXHIBIT E | DVD | Conventionally Filed with Court's Permission |
| DEPOSITION | Van Nahmen Deposition excerpts and exhibits | Electronic Attachment |
| AFFIDAVIT | R. Ausmus | Electronic Attachment |
| AFFIDAVIT | H. Nolte | Electronic Attachment |
| AFFIDAVIT | B. Temaat | Electronic Attachment |