GARCIA & ANTOSH, LLP
1401 Central
Dodge City, Kansas 67801
(620) 225-7400  P
(620) 225-4339  F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LYLE VANNAHMEN                                    *Plaintiff,*

    *vs.*                                    Case No. 17 CV 1174

DODGE CITY COMMUNITY COLLEGE                      *Defendant.*

## PLAINTIFF'S FIRST AMENDED RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff by counsel and for his response to defendant's motion for summary judgment respectfully states and suggests:

Defendant offers three main arguments: (1) that plaintiff's claim is barred by the fact the hearing of which he complains was appealable and the claims he asserts herein could have been asserted in that proceeding; (2) that plaintiff was afforded all of the process due him in connection with his disciplinary proceeding as a matter of law; and (3) that the evidence does not support a first amendment retaliation claim as a matter of law. Plaintiff disputes these three arguments, and will take each in turn.

## STATEMENT OF FACTS

1.      Plaintiff agrees with defendant's statement of fact ¶ 1.

2.      Plaintiff agrees with defendant's statement of fact ¶ 2.

3.      Plaintiff agrees with defendant's statement of fact ¶ 3.

4.      With regard to defendant's statement of fact ¶ 4, to wit:

> When plaintiff attempted to meet with Dr. Nolte on December 8, security was placed on alert.

Plaintiff disputes the statement.  Upon further review it appears that security was

placed on alert regarding him well before he attempted to meet with Dr. Nolte.

> Plaintiff's Exhibit A:  Transcript, Steven Sites:

> 37:30

> On 12/7/16 I was talking with security director Josh Thompson.  He was telling me about a gentleman by the name of Lyle VanNahmen who went into Dr. Nolte's office and either

> 38:00

> pulled down his window blinds or attempted to pull down the window blinds.  From what I understand is that VanNahmen was trying to get Dr. Nolte to resign.  On 12/8/16 I was talking to Sharon Campbell when I noticed VanNahmen walk into the student union.  He looked like he was lost.  As soon as I noticed him I went down to Dr. Nolte's office to let him know he was in the building.

5.      Plaintiff agrees with defendant's statement of fact ¶ 5.

6.      Plaintiff agrees with defendant's statement of fact ¶ 6.

7.      With regard to defendant's statement of fact ¶ 7, to wit:

> Plaintiff knew when he received the charging document (VanNahmen Depo., Ex. 6) that the hearing was going to be about his conduct on December 5 and December 8.  (VanNahmen Depo., 170:4-16.)

Plaintiff agrees with the statement in one sense and disputes the statement in another.  Though plaintiff knew that the hearing was about his encounters with DCCC employees on those two dates, he did not know what specific conduct would be addressed.  (VanNahmen Affd., ¶¶ 3-8.)

8.   Plaintiff agrees with defendant's statement of fact ¶ 8.

9.   Plaintiff has no reason to dispute defendant's statement of fact ¶ 9.

10.   Plaintiff has no reason to dispute defendant's statement of fact ¶ 10.

11.   Plaintiff objects to defendant's statement of fact ¶ 11 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

12.   Plaintiff objects to defendant's statement of fact ¶ 12 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

13.   Plaintiff objects to defendant's statement of fact ¶ 13 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

14.   Plaintiff objects to defendant's statement of fact ¶ 14 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

15.   Plaintiff objects to defendant's statement of fact ¶ 15 as wholly improper in that it

calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer

as Witness in response.

16.    Plaintiff agrees with defendant's statement of fact ¶ 16.

17.    Plaintiff agrees with defendant's statement of fact ¶ 17.

18.    Plaintiff disputes defendant's statement of fact ¶ 18, to wit:

> Mr. Antosh was furnished with the statements and reports of the
> witnesses, including Carla Patee's.  (Temaat Affd., ¶ 7)

Plaintiff was not provided with Harold Nolte's notes.  Defendant doubled-down on

the assertion that there were no Nolte notes.  In its memorandum in support of its

motion at p. 18 defendant states "[s]econd, plaintiff alleges that a written statement

of one witness - Dr. Nolte - was not provided to him.  However, there was no such

statement to provide as none was ever written.  (SOF 21.)"  Plaintiff references

Defendant's summary judgment Exhibit E at 46:58 - 47:05 minutes, also

transcribed in Plaintiff's Exhibit A at 46:30 - 47:30:

> VanNahmen:         Did you make a written statement about my
>                    incident you had with me?
>
> Nolte:             Yes.

19.    Plaintiff agrees with defendant's statement of fact ¶ 19.

20.    Plaintiff agrees with defendant's statement of fact ¶ 20.

21.    Plaintiff disputes defendant's statement of fact ¶ 21, to wit:

> Dr. Nolte did not prepare a written statement but testified live at the
> hearing.  (Nolte Affd., Plaintiff disputes defendant's statement of fact
> ¶ 18, to wit: 15; Temaat Affdl, Plaintiff disputes defendant's

statement of fact ¶ 18, to wit: 10.)

Harold Nolte did prepare a written statement that was never provided to plaintiff.

Defendant's summary judgment Exhibit E at 46:58 - 47:05 minutes, also at

Plaintiff's Exhibit A at 46:30 - 47:30:

| | |
|---|---|
| VanNahmen: | Did you make a written statement about my incident you had with me? |
| Nolte: | Yes. |

22. Plaintiff objects to defendant's statement of fact ¶ 22 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

23. Plaintiff objects to defendant's statement of fact ¶ 23 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

24. Plaintiff objects to defendant's statement of fact ¶ 24 as wholly improper in that it calls for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response.

25. Plaintiff agrees with defendant's statement of fact ¶ 25.

26. Defendant did not provide a statement of fact ¶ 26.

27. Plaintiff agrees with defendant's statement of fact ¶ 27.

28. Plaintiff agrees with defendant's statement of fact ¶ 28.

29. With regard to defendant's statement of fact ¶ 29, to wit:

>Mr. Thomas was out of state on the date of the hearing.  Since he
>was not present and subject to cross-examination, his statement was
>not presented.  (Temaat Affd. ¶ 13.)

Plaintiff agrees that Mr. Thomas was not present on the date of the hearing, and

that his statement was not presented.  Plaintiff does not know why he was not

present, and Ms. Temaat′s affidavit should not be considered on this (probably

completely immaterial) point.

30.     With regard to defendant′s statement of fact ¶ 30, to wit:

>Plaintiff knew that the evidence that would be presented at the
>hearing would include the statements and the testimony of those
>witnesses.  (VanNahmen Depo., 180:20 - 181:1)

Minor point, but plaintiff would substitute ″could″ for ″would″ (VanNahmen
Depo., 180:20 - 181:1):

>20  Q  You knew, sir, that some of the evidence that was
>21      going to be presented at the hearing --
>22  A  Yes.
>23  Q  -- was going to be Exhibit 7?
>24  A  Yes.
>25  Q  And the testimony of those witnesses; correct?
> 1  A  Could be, yes.

31.     Plaintiff agrees with defendant′s statement of fact ¶ 31.

32.     With regard to defendant′s statement of fact ¶ 32, to wit:

>The statements plaintiff received before the hearing spell out that the
>witnesses were saying that they perceived plaintiff′s conduct as
>intimidating and threatening.  (VanNahmen Depo., 179:4-7)

Although plaintiff indicated agreement on the date of his deposition, upon

subsequent review he would qualify the answer. For reasons stated in ¶ 33 which

follows, it is questionable whether the statements provided to plaintiff were in fact
the statements of their alleged authors.

33.   With regard to defendant's statement of fact ¶ 33, to wit:

> The Patee statement discusses Patee's version of plaintiff's visit to
> Dr. Nolte's office on December 5, 2016 (VanNahmen Depo, Ex. 7,
> pgs 1-2)

Though plaintiff does not dispute this statement, it must be balanced against her

statements made at plaintiff's disciplinary hearing on April 25, 2017; Plaintiff

references Defendant's summary judgment Exhibit E at 48:05 - 48:43 minutes, also

at Plaintiff's Exhibit A at 48:00 - 49:00:

| | |
|---|---|
| VanNahmen: | When I met with President Nolte in his office did you hear yelling? |
| Patee: | I don't recall that. |
| VanNahmen: | Okay, so then... when I met with President Nolte in his office did you hear me curse and you said "I didn't" so that's irrelevant- |
| Patee: | The door was closed, so- |
| VanNahmen: | Did I enter President Nolte's office without permission? |
| Patee: | No.  The door is always open. |
| VanNahmen: | Did I have to be escorted out of President Nolte's office? |
| Patee: | No. |

VanNahmen:                Okay good.

So–Carla Patee allegedly authored VanNahmen Depo. Ex. 7, pp. 1-2.  Just reproducing the first page here:

Monday, December 5:

Mr. Lyle Van Nahmen entered Carla′s office and asked to speak with Dr. Nolte.  (He had come to the office prior, but Dr. Nolte was in a meeting and not available.)

Dr. Nolte met with Mr. Van Nahmen in the President′s office.  Mr. Van Nahmen asked Dr. Nolte to lower the blinds in the office.

After some small talk about Spearville - Mr. Van Nahmen asked ″Whose stupid idea is this retail development?″

Dr. Nolte replied, ″The idea came from the City and developers and I presented this information to the Board.

Mr. Van Nahmen said ″The Board is old and stupid - if this is your idea, you need to resign.″  (He asked for Dr. Nolte′s resignation more than one time.)

Dr. Nolte replied ″I′m not going to resign″.

Mr. Van Nahmen got up and left the office.

Dr. Nolte immediately asked Mr. Keith Thomas to come to the office area and relayed this story to Mr. Thomas and Carla Patee.

What an unusual statement ″by Carla Patee,″ who apparently writes about herself in the third person, and who apparently hears conversations but not shouts through closed doors.

34.    Plaintiff agrees with defendant′s statement of fact ¶ 34.

35.     Plaintiff agrees with defendant's statement of fact ¶ 35.

36.     Plaintiff agrees with defendant's statement of fact ¶ 36.

37.     Plaintiff agrees with defendant's statement of fact ¶ 37.

38.     Plaintiff agrees with defendant's statement of fact ¶ 38.

39.     Plaintiff agrees with defendant's statement of fact ¶ 39.

40.     With regard to defendant's statement of fact ¶ 40, to wit:

> Plaintiff does not believe that there were any questions he should have asked the witnesses at the hearing that he did not ask.  (VanNahmen Depo., 189:3-6.)

Plaintiff believed the hearing was illegitimate; as such, he limited his participation

in it.

Defendant's summary judgment Exhibit E at 1:00:11 - 1:00:37 minutes, and

Plaintiff's Exhibit A at 1:00:00 - 1:01:00:

> VanNahmen:          I understand what you're saying and I'm gonna read this statement at this time.  I am exercising my right to not answer questions.  According to the student handbook the student charged may be questioned only if testifying in his or her own behalf.  Examination of witnesses by the person charged does not constitute testimony on one's own behalf.  I will not be testifying on my own behalf although I'd like to make a non-testimonial closing statement.

Defendant's summary judgment Exhibit E at 1:00:54 - 1:01:53 minutes and

Plaintiff's Exhibit A at 1:00:30 - 1:02:00:

> VanNahmen:          Okay my closing statement is, I have a number of points that I would like to make.  I do not

believe this tribunal can impartially conduct this hearing because everyone here is beholden to President Nolte, the chief complainant against me.  My understanding is that I was pre-judged guilty of misconduct and the purpose of today's hearing is to mitigate punishment.  Going into this hearing I have not been made aware of what type of punishment I am likely to face if I am found guilty of misconduct.  I have not been permitted to have members of the public here even though I have through my attorney requested that this hearing be open to the public.  My attorney has not allowed to participate in my hearing.  I have not been provided a clear statement of what I am accused of doing wrong.  I expressed myself peacefully, which is my constitutional right, and I have been penalized for doing so.

41.  Plaintiff agrees with defendant's statement of fact ¶ 41.

42.  Plaintiff agrees with defendant's statement of fact ¶ 42.

43.  With regard to defendant's statement of fact ¶ 43, to wit:

Plaintiff did not object to any of the evidence presented and does not contend that any improper evidence was considered.  (VanNahmen Depo., 189:19 - 190:9.)

Plaintiff disputes this as it assumes there was a procedure for objecting to the

introduction of evidence at the disciplinary hearing; there was none.

"Formal rules of evidence are not to be applied." Plaintiff's Exhibit A at 10:00 - 10:30.

44.  With regard to defendant's statement of fact ¶ 44, to wit:

At the hearing, the College presented witnesses to testify to the actions of the plaintiff in the meeting with Dr. Nolte on December 5 and its effect on Dr. Nolte.  (ECF Document 28, Pretrial Order

Stipulation, § 2.a.9; Ex. E, Hearing Recording.)

Minor point but plaintiff disputes any suggestion that there was more than one witness to "the actions of the plaintiff in the meeting with Dr. Nolte on December 5" although there were multiple "witnesses" if the meeting is taken in tandem with "...and its effect on Dr. Nolte." (Defendant's Summary Judgment Exhibit E)

45.   Plaintiff agrees with defendant's statement of fact ¶ 45.

46.   Plaintiff agrees with defendant's statement of fact ¶ 46.

47.   Plaintiff agrees with defendant's statement of fact ¶ 47.

48.   Plaintiff agrees with defendant's statement of fact ¶ 48.

49.   With regard to defendant's statement of fact ¶ 49, to wit:

> The security director testified that, as a result of plaintiff's behavior, he had concerns for Dr. Nolte's safety and changed security procedures including putting his desk just outside Dr. Nolte's office. (VanNahmen Depo., 191:9-22, Ex. 7, p. 6; Ex. E, Hearing Recording at 43:32 - 43:38 minutes.)

Plaintiff disputes that the security director's action were "as a result of plaintiff's behavior." The security director did not observe plaintiff's behavior; he was told about the alleged behavior. (Ex. E, Hearing Recording) (Plaintiff's Exhibit A at 43:30-44:00)

50.   Plaintiff agrees with defendant's statement of fact ¶ 50.

51.   With regard to defendant's statement of fact ¶ 51, to wit:

> At the hearing plaintiff was advised by the presiding officer that it would be helpful to explain his conduct from his point of view and to

> explain what he intended to do with his education if he were allowed to continue at the College. (Ex. E, Hearing Recording at 13:38 - 13:57 minutes, Plaintiff's Exhibit A at 13:30 - 14:00.)

52.   Plaintiff agrees with defendant's statement of fact ¶ 52.

53.   With regard to defendant's statement of fact ¶ 53, to wit:

> Plaintiff did not testify at the hearing. (ECF Document 28, Pretrial Order Stipulation, § 2.a.8.)

As previously stated plaintiff believed the hearing was illegitimate; as such, he

limited his participation in it.

54.   With regard to defendant's statement of fact ¶ 54, to wit:

> Plaintiff could have provided testimony from himself about what did or did not happen in Dr. Nolte's office on December 5, but did not. (VanNahmen Depo. 193:16-21.)

As previously stated plaintiff believed the hearing was illegitimate; as such, he

limited his participation in it.

55.   With regard to defendant's statement of fact ¶ 55, to wit:

> Plaintiff did not tell the hearing committee that any of the statements of the witnesses were not correct. (VanNahmen Depo., 194:3-5.)

As previously stated plaintiff believed the hearing was illegitimate; as such, he

limited his participation in it.

56.   With regard to defendant's statement of fact ¶ 56, to wit:

> At the hearing, one of the committee members asked plaintiff if he was going to tell them his side of the story and plaintiff declined to do so. (VanNahmen Depo., 195:4-11; Ex. E, Hearing Recording at 59:42 - 1:00:36 minutes.)

As previously stated plaintiff believed the hearing was illegitimate; as such, he limited his participation in it.

57.   With regard to defendant's statement of fact ¶ 57, to wit:

> Plaintiff knows of no additional person that would have attended the hearing if it had been open to the public. (VanNahmen Depo., 200:8-12.)

Defendant did not ask anyone (aside from his wife, who was permitted to stay after some discussion) to attend because he was advised that the hearing was closed to the public. VanNahmen Affd., ¶ 13.

58.   With regard to defendant's statement of fact ¶ 58, to wit:

> The Judicial Hearing Board that heard Lyle VanNahmen's case on April 25, 2017 consisted of two tenured faculty and the Director of Residence Life. (Temaat Affd., ¶ 16.)

Plaintiff was not made aware of the identities of the members of the disciplinary hearing panel prior to the date of his hearing, or anything about their employment circumstances aside from the fact that they were all employed by Defendant. They were not even named in Bev Temaat's affidavit, though they provided their names at the hearing. VanNahmen Affd., ¶ 9.

Additionally, at the disciplinary hearing Bev Temaat stated:

> I wanted to note for the record that our hearing panel is made up of a college staff member, a college faculty member, and a college administrator in accordance with our normal procedures. (Plaintiff's Exhibit A at 10:30-11:00)

These included:

> Monica Malley(sp?) resident life operator and student activities
> coordinator.  Jane Holwerta (sp?) dean of academics, Dodge City
> Community College...  Paul Young professor of economics.
> (Plaintiff's Exhibit A at 4:00-4:30)

59.    With regard to defendant's statement of fact ¶ 59, to wit:

> The tenured faculty had statutory contracts with the Board of
> Trustees and their contracts can only be terminated or non-renewed
> by the Board of Trustees, and that decision is subject to review in the
> Kansas courts pursuant to statute.  (Temaat Affd., ¶ 16.)

Plaintiff was not made aware of the identities of the members of the disciplinary

hearing panel prior to the date of his hearing, or anything about their employment

circumstances aside from the fact that they were all employed by Defendant.  They

were not even named in Bev Temaat's affidavit, though they provided their names

at the hearing.  VanNahmen Affd., ¶¶ 9.

Additionally, plaintiff must dispute any assertions regarding the composition of the

disciplinary hearing panel as there appears to be a discrepancy between Ms.

Temaat's statement made at hearing and her affidavit filed herein, as set forth in

¶58.

60.    With regard to defendant's statement of fact ¶ 60, to wit:

> One of the tenured faculty Board members had already submitted his
> retirement papers.  (Temaat Affd., ¶ 16.)

Plaintiff was not made aware of the identities of the members of the disciplinary

hearing panel prior to the date of his hearing, or anything about their employment

circumstances aside from the fact that they were all employed by Defendant.  They

were not even named in Bev Temaat's affidavit, though they provided their names

at the hearing.  VanNahmen Affd., ¶ 9.

Additionally, plaintiff must dispute any assertions regarding the composition of the

disciplinary hearing panel as there appears to be a discrepancy between Ms.

Temaat's statement made at hearing and her affidavit filed herein, as set forth in

¶58.

61.    With regard to defendant's statement of fact ¶ 61, to wit:

> The Judicial Hearing Board had the discretion to investigate the
> facts, weigh the evidence presented and form its own independent
> findings as to whether the conduct violated code and what sanctions
> should be imposed.  (Temaat Affd., ¶ 17.)

Plaintiff disputes that the hearing panel was independent at least with regard to

imposition of sanctions.  His post-hearing invitation to a mitigation meeting with

Bev Temaat strongly suggests otherwise.  VanNahmen Affd., ¶ 16.

62.    With regard to defendant's statement of fact ¶ 62, to wit:

> The Judicial Hearing Board panel found the plaintiff had exhibited
> behavior that threatened harm to a college employee, conducted
> himself in a disorderly matter and demonstrated threatened
> interference and intimidation towards college employees.  (Temaat
> Affd., ¶ 19; Ex. B, Hearing Disposition Letter.)

Plaintiff disputes this, as he was never provided with any oral or written

communication by any member of the panel.  The disposition letter was signed by

Bev Temaat, and not by any member of the panel.  No member of the panel was

carbon copied on the correspondence.  The hearing took place on April 25, 2017;

the letter was allegedly drafted May 2, 2017 and mailed in late May or early June of 2017.  (ECF 1-6 Letter)

63.     With regard to defendant's statement of fact ¶ 63, to wit:

>       The Judicial Hearing Board imposed a sanction of four years
>       suspension and trespass from DCCC and its property.  (Temaat
>       Affdl, ¶ 19; Ex. B, Hearing Disposition Letter.)

Plaintiff disputes this, as he was never provided with any oral or written communication by any member of the panel.  The disposition letter was signed by Bev Temaat, and not by any member of the panel.  No member of the panel was carbon copied on the correspondence.  The hearing took place on April 25, 2017; the letter was allegedly drafted May 2, 2017 and mailed in late May or early June of 2017.  (ECF 1-6 Letter)

64.     With regard to defendant's statement of fact ¶ 64, to wit:

>       Plaintiff received a letter from Dr. Temaat confirming in writing the
>       disposition of the hearing and stating that his conduct violated the
>       Code of Conduct.  (ECF Document 28, Pretrial Order Stipulation §
>       2.a.12; Ex. B, Hearing Disposition Letter.)

Plaintiff disputes this, as he was never provided with any oral or written communication by any member of the panel.  The disposition letter was signed by Bev Temaat, and not by any member of the panel.  No member of the panel was carbon copied on the correspondence.  The hearing took place on April 25, 2017; the letter was allegedly drafted May 2, 2017 and mailed in late May or early June of 2017.  (ECF 1-6 Letter)  Additionally, a minor point but there was no mention on

the letter that Ms. Temaat held a doctorate degree.

65.     Plaintiff agrees with defendant's statement of fact ¶ 65.

66.     Plaintiff agrees with defendant's statement of fact ¶ 66.

67.     Plaintiff agrees with defendant's statement of fact ¶ 67.

68.     With regard to defendant's statement of fact ¶ 68, to wit:

>       Plaintiff did not seek review pursuant to K.S.A. 60-2101(d).  (Temaat
>       Affd., ¶ 22.)

Plaintiff disputes this fact and would refer defendant to ECF 1, p. 8: "Count III:

Judicial Review.  22.  This matter having been fully adjudicated at the

administrative level, plaintiff asks that this Court exercise judicial review over

DCCC's student disciplinary proceedings involving him."  Also see ECF 9, p. 28:

III.  Does this Court have jurisdiction to provide judicial review?  Yes.  This Court

has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over a KSA 60-2101(d)

appeal of an order of a political or taxing subdivision that ordinarily would have

been brought before a Kansas district court.

69.     With regard to defendant's statement of fact ¶ 69, to wit:

>       Plaintiff has stipulated that he has no basis for contending that the
>       hearing panel was not impartial, other than they were employees of
>       the college.  (VanNahmen Depo., 185:11 - 186:13.)

Plaintiff disputes this fact as it is an incomplete statement regarding his

reservations about the composition of the hearing panel.  His concern stemmed

from the fact that everyone in the room at the hearing aside from his attorney

reported to or was governed by complainant Harold Nolte in some way shape or

form.  The first portion of the deposition cited by defendant states:

> My question is very simple.  I understand from your lawsuit that you
> allege that these people could not be impartial because they were
> employed by the college and the president of the college was -- was
> the chief witness.  I got that.

70.  Plaintiff agrees with defendant's statement of fact ¶ 70.

71.  Plaintiff agrees with defendant's statement of fact ¶ 71.

72.  Plaintiff agrees with defendant's statement of fact ¶ 72.

73.  With regard to defendant's statement of fact ¶ 73, to wit:

> Plaintiff can identify no way in which he was harmed by the delay in
> sending him the letter informing him of the Judicial Hearing Board's
> decision.  (VanNahmen Depo., 195:17 - 196:24.)

Plaintiff disputes this fact as it is an incomplete statement regarding his issue with

the delayed letter.  In itself the delay was not the problem, but a symptom of the

true problem which was that the hearing panel was not independent and had no

real authority or discretion.  VanNahmen Affd., ¶ 16.

74.  Plaintiff agrees with defendant's statement of fact ¶ 74.

75.  With regard to defendant's statement of fact ¶ 75, to wit:

> At the meeting with plaintiff on December 5, Dr. Nolte became
> concerned for his safety because of plaintiff's demeanor and
> behavior.  (Nolte Affd., ¶ 11; Ex. E, Hearing Recording, 29:25 - 29:40
> minutes.)

Plaintiff disputes this fact.

76.  Plaintiff agrees with defendant's statement of fact ¶ 76.

77.     Defendant did not provide a statement of fact ¶ 77.

78.     For the purpose of this response to defendant′s motion, Plaintiff agrees with

        defendant′s statement of fact ¶ 78.

79.     Plaintiff agrees with defendant′s statement of fact ¶ 79.

80.     With regard to defendant′s statement of fact ¶ 80, to wit:

> Dr. Nolte had no problem with plaintiff expressing opposition to the
> land proposal or requesting Dr. Nolte′s resignation.  His only
> concern was with the threatening and intimidating demeanor and
> behavior.  (Nolte Affd., ¶ 14.)

Plaintiff disputes these statements insofar as (1) he did not threaten or intimidate
Dr. Nolte, and (2) it is patently absurd to state that Dr. Nolte had ″no problem″
with the fact that Plaintiff allegedly requested his resignation.

## ARGUMENTS

I.      This action is not barred by res judicata and full faith and credit.

        Defendant first cites *Spencer v. USD 501*, 1997 Westlaw 614329 for the proposition

that federal courts must give a state court judgment the same preclusive effect as would the

originating state.  Per *Allen v. McCurry*, 449 U.S. 90 (1980), this would operate to bar

separate §1983 claims from being brought in federal court where their underlying merits had

already been ruled upon in state court.  Per *Campbell v. City of Spencer*, 777 F.3d 1073 (10th

Cir. 2014) this would also operate to bar claims that were not raised but could have been in

the earlier state court proceedings.  Plaintiff agrees with all of the above, but we do not have

a state court judgment here so there is just something lacking.

Defendant goes on to suggest by extension, citing *Thompson v. Amis*, 208 Kan. 658 (1972), that the only proper and appropriate action for plaintiff, if he wished to pursue his claims, was to seek judicial review in state court and assert his §1983 claims there. Here we disagree.

Thompson was a mess of a case where a career civil service employee who had been fired had her firing affirmed by the state civil service board. Unsure whether the action should be styled as sounding in equity or as an appeal to the district court, she filed two separate actions. Apparently counsel on both sides initially agreed that the action in equity was appropriate, and apparently the appeal to the district court was abandoned. The equitable action reached judgment, where it was appealed and cross-appealed. The Kansas Supreme Court ultimately ruled that plaintiff chose wrong and should have initially pursued the matter as an appeal to the district court. Since that action had been abandoned at the outset, the Court ruled that it lacked jurisdiction to hear the appeal because the district court did not have jurisdiction to hear the case in the action in equity that ultimately went up on appeal.

Plaintiff does not see how that has anything to do with his case. In fact, plaintiff requested judicial review as count 3 of his petition. He just asked that the federal rather than state district court conduct said review under pendent jurisdiction and in connection with its consideration of his §1983 causes of action. Defendant cites no authority suggesting that a federal district court cannot exercise pendent jurisdiction to hear a case which includes within it a cause of action for judicial review of a state agency action. It would be the inverse

of *Allen v. McCurry*, effectively barring federal courts from hearing §1983 causes of action involving school disciplinary proceedings (and a wide host of other actions.)  By defendant's rationale judicial review of a school's action can only be brought in state court, and §1983 actions must be brought at the same time as the request for judicial review or else they are waived, so, this federal cause of action could only be brought in a state court.  That would be an odd result, particularly given the history of 42 USC §1983.

point 2:  Plaintiff was not afforded all of the process due him in connection with the disciplinary proceeding as a matter of law.

Defendant suggests that as a legal and factual matter, no jury could properly find that plaintiff was denied due process.  In contrast, here is what plaintiff faced:

After a brief conversation with his school's president about a topic of local interest, about which plaintiff and the president disagreed, plaintiff calmly left.  He did not believe the conversation was particularly unpleasant.  A couple days later he returned and wanted to speak with the president again.  But now, he was treated as though he was dangerous.  He received a notice from a law enforcement officer indicating that he could attend his final examination but that if he was caught on school grounds at any other time he would be subject to arrest.  This notice also indicated to plaintiff in vague terms that he faced discipline at the school for conducting himself inappropriately.

Plaintiff did not just want to defend himself against this allegation, he first wanted to understand what it was that he allegedly did wrong.  Was it a word he said?  A gesture he made?  The way he opened or closed the door?  Did he stay after being asked to leave?  Did he enter the office without permission?

With the disciplinary hearing pending, he wanted to know what action/s he took that the school took issue with, who would be on the panel that would hear the case, could it be heard by someone who was not in a lower position at the school than his chief accuser, would he have the right to compel the attendance of witnesses, would the hearing be open to the public, would he be provided copies of all of the documents that could be used against him in the case, could his attorney conduct examination of witnesses, what penalty/ies did he realistically face in the event it was determined he had done wrong, would the appeal be heard by someone that did not report to the school president?  He asked defendant for these things.

In response, his requests were denied almost in their entirety, see ECF Doc. 1-5:

1.  With regard to his demand for additional discovery materials:  the defendant said it would comply, but then it withheld statements written by the chief witness against the plaintiff.

2.  With regard to his demand for assignment of the hearing to an independent adjudicative body, defendant denied the request.

3.  With regard to his demand that his appeal be heard by an independent reviewer: defendant granted that the president would not review a case in which he was a

witness, but that it would be reviewed by an administrator working under the president.

4.    With regard to his demand that complainants be made available for questioning: Defendant indicated it would make Carla Patee, Keith Thomas, Steven Sites, and Josh Thompson available, and that it would ask Harold Nolte and Stephanie Lanning if they were willing to testify but would not require them to do so.  In fact, Defendant did not make Keith Thomas available.  By indicating that Harold Nolte and Stephanie Lanning would not be compelled to appear, the school added confusion into the proceedings.  Were they exempt because they were too important? Were they exempt because they were considered victims who needed protection?  If so, then was Stephanie Lanning also suggesting she had been victimized by plaintiff?

5.    With regard to his demand that his counsel be permitted to conduct examination of witnesses:  Defendant denied the request.

6.    With regard to his demand that his meeting be open to the public and transcribed or recorded:  Defendant agreed to the recording but not to opening the hearing to the public.

7.    Perhaps most importantly, with regard to his demand that he be provided with more specific explanation of his alleged improper conduct:

"DCCC refers [plaintiff] to the March 5, 2017, 'charging document' which sets forth the violations of the Code of Conduct alleged by the College."

8.    Regarding his demand that he be provided with notice of the penalties he may be

subject to if found responsible for misconduct:

"The sanctions for violation of the Code of Conduct are found within the Code and set forth on pages 82-83 of the 2016-2017 Student Handbook."

9. Regarding his demand that his trespass order be immediately lifted: Defendant denied the request.

Who, in plaintiff's shoes, would not feel like "the fix was in"? Weeks after the charade of a hearing that followed, at which plaintiff exercised his right not to testify, but before he received the defendant's decision in his disciplinary matter, he was invited to meet with DCCC Vice President Bev Temaat to offer mitigation. When the terms of this meeting could not be settled on, the invitation was withdrawn. Defendant mailed him the hearing panel's decision, dated weeks earlier, just days thereafter. Clearly the hearing panel did not wield authority over plaintiff's fate; DCCC's administration did.

Defendant suggests plaintiff is nit-picking. Just the opposite. Defendant cites individual authorities it alleges are on point as to plaintiff's several individual procedural complaints. But has there ever been a reported school discipline case at this stage this dense with (at least) questionable procedural practices? Plaintiff neither received fair notice of what he did wrong nor a meaningful opportunity to be heard. Defendant conceded for the purpose of its dispositive motion that plaintiff had a property interest in his continued enrollment at DCCC. Defendant deprived him of it without due process of law.


point 3: the evidence supports a first amendment retaliation claim as a matter of law.

It is clear from the evidence that plaintiff can make a credible argument that he was punished by defendant for expressing himself peacefully and in accordance with his first amendment rights.

Respectfully Submitted,

 /s/ Peter J. Antosh
Peter J. Antosh    #21334
Garcia & Antosh, LLP
1401 Central
Dodge City, Kansas 67801
(620) 225-7400
pja22@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October 2018 I electronically filed the above and foregoing amended motion response, and on that same date I emailed a copy of same to Defendant's counsel Mr. Allen Glendenning.

 /s/ Peter J. Antosh
Peter J. Antosh