THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LYLE VANNAHMEN,                        )
                    Plaintiff,         )
                                       )
        vs.                            )        CASE #: 17-cv-1174
DODGE CITY COMMUNITY COLLEGE           )
                    Defendant          )
_____    )

## REPLY IN SUPPORT OF DEFENDANTS
## MOTION FOR SUMMARY JUDGEMENT

### INTRODUCTION

Plaintiff's Response largely fails to meet the substance of defendant's motion.  It is noteworthy for its limited citation to authority.  He admits a great deal of the factual statement but, with a single exception, offers nothing of evidentiary value to contradict the import of the facts stated.  The sole exception is not a material fact.

Plaintiff affirmatively states that he agrees with the rules indicating that a failure to appeal pursuant to K.S.A. 60-2101(d) bars an independent action like this one. But then attempts to argue that he finds this result "odd" – with no citation to any authority agreeing with him – and restates an argument that this court has already rejected – that this case is an appeal under 60-2101(d).

The due process portion of the Response is devoid of any authority and makes no attempt to distinguish the authority cited by defendant.  His argument is essentially a littany of how he wishes it had been handled differently.  But there is no legal authority to support the implied argument that how it was handled did not provide sufficient due process.

Plaintiff has effectively abandoned his First Amendment claim.  The entire section is a single sentence merely restating his claim in a conclusory fashion.   There are no arguments and no authority.

## STATEMENT OF FACTS

Plaintiff admits a great portion of the factual statement.  His attempts to controvert the remaining facts – with a single exception – do not controvert them.  In places, he refuses to accept his own sworn testimony and stipulations.  In others he evades the fact actually stated.  In still others, he simply asks the court to ignore the fact, with no controverting citations.

The admitted facts are repeated here in bold with citations omitted.  The facts plaintiff refuses to admit are restate here with defendant's response in italics.

**1.      Plaintiff was a student enrolled at DCCC.**

**2.      On or about December 5, 2016, plaintiff met with DCCC's President, Dr. Nolte, in Dr. Nolte's office.**

**3.      Plaintiff attempted to meet with Dr. Nolte again on December 8, 2016.**

4.      When plaintiff attempted to meet with Dr. Nolte on December 8, security was placed on alert. (ECF Document 1, ¶ 6.)   *This is taken from the plaintiff's Complaint.  Morever, the attempt to finesse what he has previously, affirmatively alleged, does not change the fact stated. When plaintiff walked into the student union on December 8, 2016, security was put on alert and the President was notified.*

**5.      On December 12, 2016, plaintiff was served a notice of violation of the Student Code of Behavior and informed that a hearing would be provided.**

**6.      On March 5, 2017, plaintiff was sent a notice of hearing that he considers the**

**charging document.**

7.     Plaintiff knew when he received the charging document (VanNahmen Depo., Ex. 6) that the hearing was going to be about his conduct on December 5 and December 8. (VanNahmen Depo., 170:4-16.) *This is drawn from plaintiff's own testimony. Plaintiff's addition in his response does not dispute this fact. Moreover, plaintiff's attempt to finesse this simple fact is belied by what he admits in ¶¶ 8, 9, 19 and 20 and cannot deny in ¶¶ 10, 11, that, before the hearing he was provided more detailed information about the charges and what the witnesses would say.*

8.     **Plaintiff knew that the charging document  (VanNahmen Depo., Ex. 6) was talking about his encounter with Dr. Nolte on December 5, 2016, and his attempt to talk to Dr. Nolte on December 8.**

9.     **On January 12,  2017, Plaintiff's first attorney, Andrew Stein, was provided a copy of the reports and statements of the witnesses except for Carla Patee.**

10.     **On February  27, 2017, a pre-hearing conference was held with Mr. Stein.**

11.     During the pre-hearing conference  with Mr. Stein, on February 27, 2017 the details of the events out of which the charges arose were discussed. (Temaat Affd., ¶ 4.) *Plaintiff does not contest this fact. He merely demands that the court ignore it for the non-sequiter reason that Rule 3.7 prohibits an attorney from "**act[ing] as an advocate at a trial** in which he is likely to be a **necessary** witness where**: (1) the testimony relates to an **uncontested issue; . . .**" How this rule makes the citation of this fact "wholly improper" is neither apparent, nor explained. Mr. Stein has not entered an appearance as an advocate in this case. This rule has no application to the consideration of this fact and its citation is simply a way of refusing to admit what cannot be denied.*

12.      It was explained to Mr. Stein in the February pre-hearing conference that Dr. Nolte

feared for his safety and felt intimidated and threatened during the meeting in his office on December 5, 2017. (Temaat Affd., ¶ 4.) *See #11 above.*

     13.    At the February pre-hearing conference, the changes that had been made to security as a result of Mr. VanNahmen's conduct were discussed. (Temaat Affd., ¶ 4.) *See #11 above.*

     14.    The possible sanctions that could be imposed at the hearing were also discussed with Andrew Stein on February 27, 2017. (Temaat Affd., ¶ 5.) *See #11 above.*

     15.    At the February pre-hearing conference, the parties went through the code of conduct's list of possible sanctions, including suspension. (Temaat Affd., ¶ 5.) *See #11 above.*

     16.    **The hearing was set for March 8, 2017.**

     17.    **On March 6, 2017, a new attorney – Peter Antosh – notified the college that he had been hired and requested a continuance of the hearing to accommodate Plaintiff's request for a pre-hearing conference, to allow Plaintiff and his attorney more time to consider the evidence and prepare for the hearing.**

     18.    Mr. Antosh was furnished with the statements and reports of the witnesses, including Carla Patee's. (Temaat Affd., ¶ 7.) *The tape cited by plaintiff creates a question of fact as to whether or not Dr. Nolte prepared a written statement. It is not disputed that no written statement from Dr. Nolte was provided to plaintiff and it remains defendant's position that no such document was prepared, despite Dr. Nolte's apparent misunderstanding or misstatement on the tape. However, plaintiff cannot dispute that all other reports and statements were provided.*

     19.    **At the request of Mr. Antosh, a second pre-hearing conference was held on March 24, 2017.**

20.     **Prior to the pre-hearing conference, plaintiff's attorney had received copies of the statements of Carla Patee, Stephanie Lanning, Keith Thomas Steven Sites and Josh Thompson.**

21.     Dr. Nolte did not prepare a written statement but testified live at the hearing. (Nolte Affd., ¶ 15; Temaat Affd., ¶ 10.) *The tape cited by plaintiff creates a question of fact as to whether or not Dr. Nolte prepared a statement. It is not disputed that no written statement from Dr. Nolte was provided and it remains a defendant's position that no such document was prepared, despite Dr. Nolte's apparent misunderstanding or misstatement on the tape. However, plaintiff cannot dispute that all other reports and statements were provided.*

22.     At the pre-hearing conference, the anticipated testimony of all of the witnesses, including Dr. Nolte's was discussed.  (Temaat Affd., ¶ 10.)  *See #11, above.*

23.     At the March pre-hearing conference, it was thoroughly discussed that the hearing would be Lyle VanNahmen's conduct at his meeting with Dr. Nolte on December 5, 2016, and his attempt to contact Dr. Nolte again on December 8, 2016.   (Temaat Affd., ¶ 11.)  *See #11, above.*

24.     It was very clear at the March pre-hearing conference what conduct of Mr. VanNahmen the charges were based on and would be the subject of the hearing. (Temaat Affd., ¶ 11.)  *See #11, above.*

25.     **At the March pre-hearing conference, it was agreed that any appeal from the Judicial Hearing Board, which would normally go to the President, would be assigned to another administrator.**

27.     **At the March pre-hearing conference, plaintiff's attorney requested that the following itnesses be made available for questioning at the hearing:**

      a        **Carla Patee**

      **b.**      **Keith Thomas**

      **c.**      **Steven Sites**

      **d.**      **Josh Thompson**

      **e.**      **Stephanie Lanning.**

      **f.**      **Harold Nolte**

28.    **At the hearing on April 25, 2017, all of the witnesses listed were present, testified and were subject to cross-examination except for Keith Thomas.**

29.    Mr. Thomas was out of state on the date of the hearing. Since he was not present and subject to cross-examination, his statement was not presented. (Temaat Affd. ¶ 13.) *Plaintiff admits he has nothing to controvert this fact but simply requests – without explanation or citation – that Ms. Temaat's affidavit be disregarded.*

30.    **Plaintiff knew that the evidence that** *could* **be presented at the hearing would include the statements and the testimony of those witnesses.** *Defendant agrees to the minor change in wording from "would" to "could."*

31.    **Prior to the hearing, plaintiff personally received copies of the statements of Carla Patee, Stephanie Lanning, Keith Thomas and Josh Thompson.**

32.    The statements plaintiff received before the hearing spell out that the witnesses were saying that they perceived plaintiff's conduct as intimidating and threatening.  (VanNahmen Depo., 179:4-7.)  *This is plaintiff's testimony under oath:*

> Q:    *And they spell out what those people were saying; they perceived*
>          *Your conduct as being intimidating or threatening. Correct?*

A.      They do.

It is improper for plaintiff to attempt to contradict his won testimony to avoid summary judgment.  Particularly when he cites nothing of evidentiary value to contradict it.  Moroeover, his response does not address the purpose of the fact. The fact establishes that plaintiff had advance notice of the evidence to be presented at the hearing.  His quibbling with whether the evidence was true or who authored it does not dispute the fact that he had notice of the evidence in advance of the hearing.

33.      **The Patee statement discusses Patee's version of plaintiff's visit to Dr. Nolte's office on December 5, 2016.**  (VanNahmen Depo, Ex. 7, pgs 1- 2.)[1] *Plaintiff expressly states that he does not dispute this statement but then adds other statements that entirely miss the point of this fact – plaintiff had advance notice of the evidence against him.  Whether he agrees with the evidence is another issue.*

34.      **The Patee statement states that Dr. Nolte was noticeably shaken and immediately went to find Mr. Thomas, a school security guard.**

35.      **The statement of the Director of Security – Josh Thompson – stated that, after the December 8 incident he changed security procedures, including moving his desk to the lobby of Dr. Nolte's office.**

36.      **Plaintiff met with his attorney in advance of the hearing, reviewed the statements and prepared questions to ask the witnesses, including Dr. Nolte and Stephanie Lanning.**

37.      **The hearing was held on April 25, 2017.**

---

[1] The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.8.)

38.     **Plaintiff attended the hearing accompanied by his attorney, who was permitted to advise him.**

39.     **Plaintiff's attorney was allowed to record the hearing on his I-pad.**

40.     Plaintiff does not believe that there were any questions he should have asked the witnesses at the hearing that he did not ask**.**  (VanNahmen Depo., 189:3-6.) *Plaintiff's response impliedly admits this fact. Moreover, it is what he testified to under oath.*

41.     **There were no questions that plaintiff was not allowed to ask of the witnesses at the hearing.**

42.     **There was no evidence that plaintiff wanted to present at the hearing that he was not allowed to present.**

43.     Plaintiff did not object to any of the evidence presented and does not contend that any improper evidence was considered. (VanNahmen Depo., 189:19 thru 190:9.) *Plaintiff objects to this fact but does not actually dispute it.*

44.     At the hearing, the College presented witnesses to testify to the actions of the plaintiff in the meeting with Dr. Nolte on December 5 and its effect on Dr. Nolte.  (ECF Document 28, Pretrial Order Stipulation, § 2.a.9;  Ex. E, Hearing Recording.)  *Plaintiff stipulated to this in the Pretrial Order, yet now seeks to quibble with it.  Moreover, his "minor point" does not dispute the fact.*

45.     **At the hearing, Dr. Nolte testified that he was concerned for his safety and felt threatened by plaintiff during the encounter on December 5.**

46.     **At the hearing Dr. Nolte testified that plaintiff scared him during the encounter on December 5.**

47.     **At the hearing,  Dr. Nolte testified that the encounter on December 5 caused him to consider obtaining additional security at his home.**

48.     **At the hearing Carla Patee testified that, following plaintiff's meeting with Dr. Nolte  on December 5, Dr Nolte appeared noticeably shaken and went immediately to find the security guard.**

49.     **The security director  testified that, as a result of** *the reports he received of* **plaintiff's behavior, he had concerns for  Dr. Nolte's safety and changed security procedures including putting his desk just outside  Dr Nolte's office.**  (VanNahmen Depo., 191:9-22, Ex. 7, p. 6;  Ex. E, Hearing Recording at 43:32  - 43:38 minutes.) *While the difference is immaterial, defendant will adopt and incorporate plaintiff's tweak that the security director acted on reports of plaintiff's behavior, rather than his own observations of it.*

50.     **At the hearing, plaintiff was advised by the presiding officer that one of the most important parts of the hearing was his opportunity to explain what he did or did not do and provide any information he wanted to provide about whether or not he had been intimidating and threatening.**

51.     **At the hearing plaintiff was advised by the presiding officer that it would be helpful to explain his conduct from his point of view and to explain what he intended to do with his education if he were allowed to continue at the College.**

52.     **Plaintiff presented no witnesses at the hearing.**

53.     **Plaintiff did not testify at the hearing.** (ECF Document 28, Pretrial Order Stipulation,  § 2.a.8.) *Plaintiff stipulated to this fact in the Pretrial Order.  And plaintiff does not*

*actually dispute this fact.  He merely offers assertions about why he did testify.  But it stands uncontroverted that he did not testify.*

54.     Plaintiff could have provided testimony from himself about what did or did not happen in Dr. Nolte's office on December 5, but did not.  (VanNahmen Depo. 193:16-21.)  *This fact is plaintiff's sworn testimony.  Moreover, plaintiff does not actually dispute this fact.  He merely offers assertions about why he did not testify or present evidence.  But it stands uncontroverted that he did not testify or present evidence, even though he was invited to and could have.*

55.     Plaintiff did not tell the hearing committee that any of  the statements of the witnesses were not correct.  (VanNahmen Depo., 194:3-5.)  *This is plaintiff's sworn testimony. Moreover, plaintiff does not actually dispute this fact.  He merely offers assertions about why he did attempt to dispute the evidence at the hearing.  But it stands uncontroverted that he did not.*

56.     At the hearing, one of the committee members asked plaintiff if he was going to tell them his side of the story and plaintiff declined to do so. (VanNahmen Depo.,195:4-11; Ex. E, Hearing Recording at 59:42 - 1:00:36 minutes.)  *Plaintiff's response in no way contradicts this fact, taken from his own testimony and clearly on the tape.*

57.     Plaintiff knows of no additional person  that would have attended the hearing if it had been open to the public.   (VanNahmen Depo., 200:8-12.)  *Plaintiff's response in no way contradicts this fact, taken from his own testimony.*

58.     The Judicial Hearing Board that heard Lyle VanNahmen's case on April 25, 2017, consisted of two tenured faculty and the Director of Residence Life. (Temaat Affd., ¶ 16.)  *Plaintiff's response in no way contradicts this fact.*

59.     The tenured faculty had statutory contracts with the Board of Trustees and their

contracts can only be terminated or non-renewed by the Board of Trustees, and that decision is subject to review in the Kansas courts pursuant to statute.  (Temaat Affd., ¶ 16.) *Plaintiff's response in no way contradicts this fact.*

60.     One of the tenured faculty Board members had already submitted his retirement papers. (Temaat Affd., ¶ 16.)  *Plaintiff's response in no way contradicts this fact.*

61.     The Judicial Hearing Board had the discretion to investigate the facts, weigh the evidence presented and form its own independent findings as to whether the conduct violated code and what sanctions should be imposed.  (Temaat Affd., ¶ 17.)  *This response does not dispute this fact.  He merely argues about whether and how the board exercised the discretion it undeniably had.*

62.     The Judicial Hearing Board panel found the plaintiff had exhibited behavior that threatened harm to a college employee, conducted himself in a disorderly manner and demonstrated, threatened interference and intimidation towards college employees. (Temaat Affd., ¶ 19; Ex. B, Hearing Disposition Letter.)[2] *Plaintiff offers nothing of evidentiary value to dispute this fact.  The fact that the letter was written by the presiding officer rather than a board member, in no way disputes the fact that it records the findings of the Board.*

63.     The Judicial Hearing Board imposed a sanction of four years suspension and trespass from DCCC and its property.   (Temaat Affd., ¶ 19;  Ex. B,  Hearing Disposition Letter.) *Plaintiff offers nothing of evidentiary value to dispute this fact.  The fact that the letter was written by the presiding officer rather than a board member, in no way disputes the fact that it records the findings of the Board.*

---

[2]   The parties have stipulated to the introduction of this document in the Pretrial Order. (ECF Document 28, Pretrial Order Stipulation, § 2.b.5.)

64.     Plaintiff received a letter from *Bev* Temaat confirming in writing the disposition of the hearing and stating that his conduct violated the Code of Conduct. (ECF 28, Pretrial Order, Stipulation § 2.a.12; Ex. B, Hearing Disposition Letter.)  *Plaintiff stipulated to this in the Pretrial Order, with the exception of the reference to "Dr. Temaat."  In fact, Ms. Temaat does not have a doctor's degree and defendant will accept that correction.*

65.     **Plaintiff timely appealed the hearing decision. (Ex. C, Notice of Appeal to Administrator.**

66.     **The appeal was considered by The Dean of Workforce Development & Title V, Ryan Ausmus, who upheld the decision and sanctions.**

67.     **Mr. Ausmus had the authority to uphold, reverse or modify the Board's disposition.**

68.     Plaintiff did not seek review pursuant to K.S.A. 60-2101(d).  (Temaat Affd., ¶ 22.)  *Plaintiff's response does not dispute that he failed to seek review **pursuant to K.S.A. 60-2101(d).** That statute requires a notice of appeal to be filed with the clerk of the District Court in Ford County. Filing a lawsuit in federal court is not an appeal "pursuant to K.S.A. 60-2101(d).*

69.     Plaintiff has stipulated that he has no basis for contending that the hearing panel was not impartial, other than they were employees of the college.  (VanNahmen Depo., 185:11 thru 186:13.)  *Plaintiff's response does not dispute this stipulation to which he has already agreed, he merely states it a different way.*

70.     **The "charging document" advised plaintiff that the possible penalties that could be imposed could be found on pages 77-84 of the student handbook**.

71.     **Page 84 of the student handbook states one of the possible sanctions could be**

suspension from the college for a specified period of time.

72.     **Plaintiff reviewed the handbook pages setting out the potential range of sanctions, including suspension.**

73.     Plaintiff can identify no way in which he was harmed by the delay in sending him the letter informing him of the Judicial Hearing Board's decision.  (VanNahmen Depo., 195:17 thru 196:24.)  *This is plaintiff's testimony.  And the response does not actually dispute this fact but merely attempts to restate it differently.*

74.     **Plaintiff has never heard anyone associated with DCCC indicate that they were upset with him because he opposed the land sale, requested Dr. Nolte's resignation or was opposed to the purchase of the dome.**

75.     At the meeting with plaintiff on December 5, Dr. Nolte became concerned for his safety because of plaintiff's demeanor and behavior.  (Nolte Affd, ¶ 11; Ex. E, Hearing Recording, 29:25-29:40 minutes.)  *Plaintiff merely asserts he disputes this fact but offers no evidence to dispute it.*

76.     **Dr. Nolte has a degree in counseling and a background in sociology and psychology**.

78.     **Dr. Nolte has been in higher education for 38 years and is very experienced with situations involving public controversy**.

79.     **Other students and employees, as well as members of the public shared Mr. VaNanhmen's opposition to the land sale.**

80.     **Dr. Nolte had no problem with plaintiff expressing opposition to the land**

**proposal or requesting Dr. Nolte's resignation.**  His only concern was with the threatening and intimidating demeanor and behavior.  (Nolte Affd., ¶ 14.)  *Plaintiff expressly does not dispute the first sentence.  His attempt to dispute the second sentence does not actually dispute it.*

## ARGUMENTS AND AUTHORITIES

### I.     This case is barred by *res judicata* and full faith and credit.

Plaintiff does not dispute that he had the right to appeal under K.S.A. 60-2101(d).  He does not dispute that when the right to appeal is available it is the exclusive remedy. Plaintiff expressly agrees that these rules "operate to bar separate 1983 claims from being brought in federal court where their underlying merits had already been ruled upon in the state court [or] that were not raised but could have been in the earlier state court proceedings. (ECF No. 37, p. 19.)  But then he makes *non sequiter* arguments in an attempt to avoid the simple fact that he did raise or could have raised all of his complaints with the process in the disciplinary proceeding and in the appeal provided for by K.S.A 60-2101(d).

In the *Thompson* case, as here, an appeal was not filed but a direct action brought. As plaintiff himself concedes, the ruling in that case was that an appeal had to be brought and the failure to do so barred the independent action. While plaintiff claims to be unable to see what that has to do with this case, it is directly on point.  When an appeal is available under the statute, an independent action cannot be brought.

Plaintiff's argument implies, without stating, that a state court proceeding is not final unless the plaintiff chooses to pursue all avenues of review.  By that argument, no un-appealed District Court decision could be a final judgment because it was not appealed.  Of course, plaintiff cites no authority for this remarkable proposition.

Plaintiff also argues, without citation to any authority, that an independent action in federal court seeking review is the equivalent of an appeal to the state District Court. However, this Court has already disposed of this argument by dismissing Count III of plaintiff's complaint, for failure to state a claim.  (ECF No. 27.)

What plaintiff's argument also overlooks is that this is a due process claim. The claim is that state procedures did not provide due process. The simple fact is that plaintiff did have process available to him that he chose not to access. He had the right to appeal the disciplinary decision to the District Court, appeal that decision to the Court of Appeals, seek review of that decision in the Kansas Supreme Court, and seek review of that decision in the United States Supreme Court. The fact that he stopped at the second step of the process does not mean that he has been denied due process. He was afforded due process to take his complaints about the first two steps of the process to the District Court and beyond.

What the law does not allow is for plaintiff to abandon the process available to him in state court and file an independent action as he has done.

## II.    Plaintiff received due process.

Plaintiff's response to this portion of the motion for summary judgment is completely devoid of any citation to any authority. He makes no attempt to address the specific alleged deficiencies listed in his complaint or provide any authority indicating that the process he was provided was sufficient to meet due process requirements. He claims that he did not receive information he had requested, but offers no authority for the proposition that the information he was provided was insufficient to meet the requirements of due process.

### A.    Plaintiff has alleged no protected liberty interest.

Plaintiff does not contend that he has alleged a liberty interest.

**B.  Plaintiff's right to due process was not violated.**

Plaintiff makes no attempt to dispute that the Constitution does not forbid deprivation of property by DCCC. It only requires that the individual be afforded an appropriate level of process in connection with the deprivation. *See, Baker v. McCollan,* 443 U.S. 137 (1979); *Farthing v. City of Shawnee,* 39 F.3d 1131, 1135 (10th Cir. 1994); ECF Document 27, p. 6.

Nor does he dispute that the appropriate level of process for disciplinary dismissals of a student does not require a formal hearing.

**First**, plaintiff continues to boldly assert that the hearing panel and administrative reviewer were not impartial because they were employees of the College.  But he ignores the fact that the Tenth Circuit has already rejected his argument, holding that a university hearing panel comprised of employees of the university does not in and of itself indicate an impartial tribunal.  *Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 519-520 (10th Cir. 1998.)  Plaintiff does not mention this case let alone attempt to distinguish it.

Plaintiff makes no allegations of a personal or financial stake on the part of the panel members.

**Second**, plaintiff  alleges that a written statement of one witness – Dr. Nolte –  was not provided to him.   Perhaps he has raised a question of fact by pointing out that Dr. Nolte apparently indicated a written statement was prepared at the hearing. However, this a question of fact is not material.

Plaintiff makes no attempt to provide any authority for the proposition that there is a legal requirement that written statements be prepared in advance and provided. Nor does he make any

attempt to show that the lack of such a report had an  adverse effect on the hearing.   Both of plaintiff's attorneys had pre-hearing conferences at which the expected testimony of the witnesses was fully discussed.   (SOF 11,12, 22, 23.) Plaintiff was able to meet with his attorney and prepare questions to ask in advance of he hearing, including questions for Dr. Nolte. (SOF 36.)  There are no questions that he should have asked but did not get to.  (SOF 40-42.)  He was, therefore, not denied a meaningful opportunity to be heard.

**Third**, plaintiff makes no attempt to defend this point in his response. He admits that he was able to prepare to cross-examine the witnesses,  and did.  There are no questions he should have asked that he was not prepared to ask because he did not know for *certain* that they would appear.  (SOF 40-42.)

**Fourth**, plaintiff complains that his attorney was not allowed to participate in cross-examining witnesses. Here again, plaintiff makes no attempt to defend this point, offers no authority for the proposition that due process required the participation of his attorney and makes no attempt to distinguish the case law to the contrary provided by defendant.

**Fifth**, plaintiff complains that the hearing was not open to the public, but once again, offers no authority for the proposition that due process requires that the hearing be open to the public or that the failure to make it open to the public had any effect on the outcome.

**Sixth**, plaintiff complains that he received insufficient notice of the charges against him. His response on this point is simply to list questions that he claims he wanted answered in advance of the hearing. But he cites no authority for the proposition that the failure to answer all of his specific questions in advance of the hearing constituted a failure to provide the minimum required due process.

The uncontroverted facts of this case show that plaintiff was given a meaningful opportunity to be heard and that putting more in the writing would have provided no value.  Long before the hearing, plaintiff was made fully aware of the charges against him, the witnesses who would be presented, what they would say and the exhibits that would be presented. He was given written statements from most of the witnesses setting forth what they were going to say. (SOF 9-14, 18-24, 30-36.)  Plaintiff admits that he had opportunity to prepare questions to ask in advance of the hearing, that there were no questions he should have asked but did not get to and that nothing was offered at the hearing that he did not know was going to be offered.

**Seventh**, plaintiff complains that he was not given adequate notice of the potential penalties. Notice of potential penalties is not a required element of due process.  Plaintiff makes no attempt to dispute or distinguish *Trujillo v. Toas Mun. Sch.,* U.S. App. LEXIS 15938 at *6 (10th Cir, 1996), which held that notice of potential penalties is not a required element of due process. Nor can he dispute the simple fact that he was directed to the specific pages of the code of conduct that set forth the potential penalties he faced.  (SOF 70-72.)  Nor can he dispute that each possible sanctions were gone over with plaintiff's attorney in the first pre-hearing conference.  (SOF 14.)  His only attempt to avoid this important fact is to erroneously claim that attorneys cannot be witnesses and, therefore, no one can testify to any event in which an attorney participated. Even if the attorney is not an attorney of record in this case! Of course, he cites no authority to support that proposition.

**Eighth**, plaintiff complains that the committee's decision contained insufficient findings of fact. However, plaintiff offers no authority for the proposition that the letter he was provided is insufficient to meet the requirements of due process. He does not dispute that the due process

analysis is an "intensely practical" analysis or that the purpose of sufficient findings is to allow meaningful review. He makes no attempt to argue that meaningful review cannot be conducted.

Plaintiff's response completely ignores the most important facts on this point. A tape recording was made of the hearing, that tape recording was reviewed by the reviewing officer and could have been reviewed by the District Court on an appeal. But most importantly, the tape recording did not contain conflicting evidence that would have left it unclear what the board found to be the facts. The evidence was entirely one sided. Plaintiff presented no evidence or even an argument in opposition to the evidence of the College's fact witnesses. There were only two witnesses to the plaintiff's conduct in the December 5 meeting with Dr. Nolte and only one of them testified. That testimony was supported by Ms. Patee's testimony that Dr. Nolte appeared noticeably shaken and the reaction of the Security Director implementing new procedures. **Plaintiff did not even bother to tell the Judicial Hearing Board that any of the statements of the witnesses was incorrect**. (SOF 55.)

There was only one finding that could be made from the evidence. Plaintiff does not dispute this. He merely attempts to explain why he did not provide any evidence. But that explanation is irrelevant on this point. The point here is simply that the record was entirely one-sided with only one conclusion available to be made from the evidence.

Finally, plaintiff does not dispute that in the Tenth Circuit, a transcript of disciplinary hearings constitutes an adequate substitute for written findings. *See Smith v. Maschner*, 899 F.2d 940, 956 (10th Cir. 1990). The tape is particularly sufficient in this case since the evidence at the hearing was uncontradicted and supported only one conclusion. It is simply unreasonable to argue that plaintiff lacked sufficient notice of what the findings were on this record.

**Ninth,** plaintiff makes no attempt to address this point in his response.

**Tenth**, plaintiff complains that the apparent delay between when the Board's decision was written and when it was delivered to him constitutes a due process violation. But he admits that no deadline was running during the delay or that he was unable to timely seek review. In fact, he affirmatively alleges he did seek timely review. He further can identify no way in which the delay harmed him. (SOF 73.) There is simply no legal support for the proposition that a written decision must be delivered immediately. Certainly plaintiff cannot show that this delay negatively impacted his right to be heard. Plaintiff makes no attempt to address this point in his response.

II.     **Plaintiff's First Amendment rights were not violated**

Plaintiff completely punts on this point. He makes no point to address any of Defendant's argument and makes no attempt to address the applicable case law. This portion of his brief contains no law and no argument but merely an unsupported conclusory assertion. He has, therefore, effectively abandoned this claim. *See Eyring v. Fondaco,* 667 Fed. Appx 983, 985 (10ᵗʰ Cir. 2016)(failure to advance an argument when opposing a motion to dismiss constitutes abandonment of that claim in the District Court); *Gearheart v. Clickspeed Mktg.,* 2013 U.S. Dist. LEXIS 117656 (D. Kan. Aug. 20, 2013)(making no argument in support of a bare legal conclusion and showing no facts to support it results in finding that the claim has been abandoned); *Foreclosure Mgmt. Co. v. Asset Mgmnt. Holdings, LLC,* 2008 U.S. Dist. LEXIS 72513 *31 (D.Kan. Aug. 12, 2008).

## CONCLUSION

Plaintiff has clearly been provided sufficient due process as a matter of law. Not only was the original hearing conducted in accordance with due process, the plaintiff was afforded an appeal process which he neglected to pursue. This failure to pursue the available appeal process in and of

itself bars this claim. Plaintiff has abandoned his First Amendment claim and the uncontroverted facts require summary judgment on that claim.

<div style="margin-left:40%">

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/     ALLEN G. GLENDENNING_____

Allen G. Glendenning , #12187
1321 Main - Suite 300
P.O. Drawer 1110
Great Bend, Kansas  67530
(620) 792-8231; aglenden@wcrf.com
Attorneys for Defendant

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2018, I electronically filed the above and foregoing Reply in Support of Motion for Summary Judgment by using the CM/ECF system which will send a notice of electronic filing to the following:  Peter Antosh

<div style="margin-left:40%">

/s/     ALLEN G. GLENDENNING_____
Allen G. Glendenning, #12187

</div>