# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LYLE VANNAHMEN,

    *Plaintiff,*

v.

    Case No. 17-CV-1174-EFM

DODGE CITY COMMUNITY COLLEGE,

    *Defendant.*

## MEMORANDUM AND ORDER

    This case arises out of Plaintiff Lyle VanNahmen's suspension from Defendant Dodge City Community College ("DCCC"). While enrolled as a student at DCCC, Plaintiff expressed displeasure to Defendant's president regarding a proposal for Defendant to sell land for retail development and demanded the president's resignation. Defendant subsequently suspended Plaintiff for four years. Plaintiff filed suit against Defendant alleging a violation of his procedural due process rights and alleging that Defendant retaliated against him for exercising his First Amendment rights. This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 31). For the reasons stated below, the Court denies Defendant's Motion.

## I. Factual and Procedural Background[1]

*Pre-Hearing Events*

Plaintiff was a student enrolled with Defendant in the fall semester of 2016. On December 5, 2016, Plaintiff met with Defendant's president, Dr. Nolte, in Dr. Nolte's office. On December 8, 2016, Plaintiff attempted to meet with Dr. Nolte to present him with a resignation letter to sign. Plaintiff did not actually meet with Dr. Nolte on that day, but instead had the resignation letter delivered to Dr. Nolte by a member of security. On December 12, 2016, Plaintiff received a notice of violation of the Student Code of Behavior and was informed that a hearing would be provided. The notice was dated December 12, 2016, and signed by Stephanie Lanning, the Dean of Students.

On March 5, 2017, Defendant sent Plaintiff a notice of hearing—Plaintiff considered this the "charging document." Plaintiff knew when he received the charging document that the hearing was going to be about his conduct on December 5 and 8, 2016.[2] Plaintiff knew that the charging document revolved around his encounter with Dr. Nolte on December 5, 2016, and his attempt to talk to Dr. Nolte on December 8, 2016. Plaintiff's first attorney, Andrew Stein, attended a pre-hearing conference on February 27, 2017.[3] The Hearing was originally set for March 8, 2017.

---

[1] Unless otherwise noted, the facts contained in this section are uncontested for purposes of summary judgment and viewed in the light most favorable to Plaintiff.

[2] The March 5, 2017, letter identifies December 5 and December 8 as dates on which Plaintiff allegedly violated the Behavior Misconduct and Assault sections of the Code of Conduct.

[3] Plaintiff objects to most of Defendant's statements of fact describing the events that took place at this pre-hearing conference. Plaintiff objects to various statements of fact "as wholly improper" because the statements "call[] for a violation of Kansas Rules of Professional Conduct 3.7 Advocate: Lawyer as Witness in response." Plaintiff provides no explanation for this objection. Rule 3.7 of the Kansas Rules of Professional Conduct prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness unless certain exceptions are present. Plaintiff cannot refuse to admit facts recounting what took place at a pre-hearing meeting between representatives of Defendant and Plaintiff's attorney merely because his attorney participated in the meeting. Plaintiff has provided no explanation as to why the statements of fact objected to in this manner should not be deemed uncontested for purposes of this motion, and his objections on such basis are overruled.

On March 6, 2017, Plaintiff's new attorney, Peter Antosh, notified the college that he had been retained by Plaintiff and requested a continuance of the Hearing. Antosh received statements and reports of the witnesses, but did not receive Dr. Nolte's notes. The parties dispute whether Dr. Nolte prepared any notes regarding the events that took place in December 2016.

A second pre-hearing conference was held on March 24, 2017.[4] DCCC appeared through counsel, Glenn Kerb, Plaintiff appeared through counsel, Peter Antosh, and Beverly Temaat appeared in her capacity as "special judicial officer." At the conference, Defendant informed Plaintiff's counsel that the Hearing would encompass Plaintiff's conduct at his meeting with Dr. Nolte on December 5, 2016, and his attempt to contact Dr. Nolte again on December 8, 2016. Defendant also shared the anticipated testimony of all of its witnesses. Plaintiff's counsel requested that certain witnesses be made available at the Hearing, and all but one of the witnesses identified by Plaintiff appeared at the Hearing.[5] The parties agreed that any appeal, which would normally go to the President, would be assigned to a different administrator.

Defendant did not allow Plaintiff's attorney to speak at the Hearing,[6] but Plaintiff met with his attorney in advance of the hearing, reviewed witness statements, and prepared questions to ask witnesses.

---

[4] Plaintiff asserts the same objection to Defendant's statements of fact regarding the second pre-hearing conference as discussed in footnote 3 above. For the same reasons, the Court overrules Plaintiff's objections.

[5] Defendant did not introduce the statement of the one witness that did not appear at the Hearing.

[6] Plaintiff's attorney could be present during the hearing and advise Plaintiff, but Defendant prohibited him from asking questions during the hearing and from cross-examining witnesses.

*Conduct Review Hearing*

Plaintiff's Hearing before the Judicial Hearing Board occurred on April 25, 2017.[7] It appears as though the Judicial Hearing Board[8] consisted of Monica Malley, Jana Holwerta, and Paul Young, however, neither party provides much detail regarding the makeup or workings of the Judicial Hearing Board.[9] During the Hearing, Temaat stated that she was acting as the "Chief Judicial Officer," and presented witnesses to testify to the actions of Plaintiff in the meeting with Dr. Nolte on December 5, 2016, and its effect on Dr. Nolte. Prior to calling witnesses, Temaat stated "we will start calling our witnesses related to a couple of incidents that led to us all being here that we believed were violations of the code of conduct on your part and that's why we put the temporary sanctions in place." Each of the five witnesses called by Temaat read into the record his or her prior written statement(s), and Temaat then had an opportunity to question the witnesses. After Temaat had finished examining each of Defendant's witnesses, Plaintiff had an opportunity to question each witness.

Temaat's first witness was Stephanie Lanning. Lanning stated that she had spoken with Plaintiff on Monday, December 5, 2016, prior to the meeting between Plaintiff and Dr. Nolte, and

---

[7] Defendant submitted a recording of the hearing, Exhibit E. The following individuals appeared at the hearing: Steven Sites, Security Coordinator; Stephanie Lanning, Dean of Students; Carla Patee, Executive Assistant to the President; Dr. Harold Nolte, DCCC President; Josh Thompson, Director of Security; Betty Ann South, Admissions Assistant; Beverly Temaat, Vice President of Student Affairs and Risk Management; Glenn Kerbs, college attorney; Monica Malley, Resident Life Operator and Student Activities Coordinator; Jana Holwerta, Dean of Academics; Paul Young, Professor of Economics; Lawana VanNahmen, Plaintiff's wife; Peter Antosh, Plaintiff's lawyer, and Plaintiff.

[8] The parties appear to also refer to the Judicial Hearing Board as the "Board," "hearing panel," and "panel." Thus, all references herein to the "Board," "hearing panel," or "panel" are references to the Judicial Hearing Board.

[9] During the hearing, Temaat stated that the Judicial Hearing Board was made up of a college staff member, a college faculty member, and a college administrator, but Defendant asserts in its statement of facts section that the Board was comprised of two tenured faculty and the Director of Residence Life. While this inconsistency may have no material impact on the issues in this case, it further highlights the lack of clarity surrounding the Board.

that Plaintiff had been asking about whether the college intended to sell land for retail development. Lanning was not present during the meeting between Plaintiff and Dr. Nolte, but instead, learned about the meeting from others. She stated that at approximately 3:00 p.m. on December 5, 2016, during a cabinet meeting, Dr. Nolte told her that he had met with Plaintiff just before their meeting. Lanning recounted that she had seen Plaintiff on Thursday, December 8, 2016, at approximately 8:30 a.m. in student services. According to Lanning, Plaintiff sat down and began writing a letter.[10] Plaintiff then went to Lanning's office and requested that security follow him to witness a signature—Plaintiff declined to tell Lanning whose signature he sought, stating that he did not want her to know so as to keep her out of the situation. The following morning Temaat informed Lanning that Plaintiff had requested Dr. Nolte's resignation. Lanning stated:

> On Friday December 9, at 8:00 a.m. 2016, at 8:00 a.m. I was informed by Beverly Temaat, Vice President of Student Affairs, that [Plaintiff] requested the president's resignation immediately for his involvement in selling the college property. At this point, and as the dean of students, I temporarily trespassed [Plaintiff] from camp -- campus-wide except for his final exam in A&P1 for behavior misconduct. I gave the letter to Beverly Temaat to give to security to deliver to [Plaintiff].

Temaat then called Dr. Nolte. Dr. Nolte gave his account of what happened on December 5, 2016, in his meeting with Plaintiff. Dr. Nolte stated that he invited Plaintiff into his office and that Plaintiff entered his office in somewhat friendly manner. Dr. Nolte stated that the conversation changed quickly as Plaintiff asked, "who's stupid idea was the retail development." According to Dr. Nolte, Plaintiff quickly became upset and called the board "old and stupid," and said "if this is your idea you need to resign." Dr. Nolte described it as a quick conversation and said he was

---

[10] Presumably, the resignation letter later presented to Dr. Nolte.

concerned about his safety because Plaintiff "got pretty upset." He stated it was "pretty intense" and that he had to "talk [Plaintiff] off the ledge." Dr. Nolte stated that he was concerned about his welfare and talked to individuals in security and considered doing things at his home. Dr. Nolte stated that he viewed the resignation letter drafted by Plaintiff when it was shown to him by Steven Sites. He did not state that he had any contact with Plaintiff after December 5, 2016.

Steven Sites, Security Coordinator, read his incident report into the record. Sites was not present during the meeting between Plaintiff and Dr. Nolte, but instead learned about it from others. Sites stated that he had contact with Plaintiff on December 8, 2016, and that he gave Dr. Nolte the resignation letter prepared by Plaintiff. Sites stated that he had been asked by Director Thompson and Temaat to deliver Lanning's December 10, 2016, no trespass letter to Plaintiff. During his statement, Temaat interrupted and corrected Sites as to the timing of when Sites was asked to deliver the letter. Sites did not state that Plaintiff had acted inappropriately on December 8, 2016, and on cross stated that Plaintiff had never been rude to him.

After calling all witnesses on behalf of the college,[11] Temaat stated that she considered the most important part of the hearing to be the part where Plaintiff has an opportunity to tell his side of the story and to ask questions. Plaintiff briefly questioned witnesses, but declined to provide his account of what happened during the December 5, 2016, meeting.

*Post-Hearing Events*

After the Hearing Plaintiff received a letter from Temaat "confirm[ing] in writing the final disposition of the conduct review hearing." Although dated May 2, 2017, it appears as though

---

[11] Defendant also called Carla Patee and Josh Thompson as witnesses, and each read their prior statements into the record.

Plaintiff did not receive this letter until on or about June 6, 2017.[12] The letter states that Plaintiff's "conduct and behavior on the campus during the end of the fall 2016 semester violated the DCCC Code of Conduct," and imposed sanctions. The sanctions included: (1) a four-year suspension, (2) a prohibition from entering all areas of the DCCC campus during the suspension, and (3) a requirement that Plaintiff obtain, at his own expense, and provide to Defendant an assessment from an approved, licensed counseling professional specific to his conduct during the fall 2016 semester.

Plaintiff appealed the disposition of his Hearing to Ryan Ausmus, Dean of Workforce Development & Title V. On June 30, 2017, Ausmus affirmed the final disposition. The affirmance stated:

> This letter is to notify you in writing that I have reviewed your appeal related to the final disposition and sanctions of the conduct review panel. After careful review and in accordance with Dodge City Community College policy, I uphold the decision (with no revisions) and all sanctions noted in the conduct review panel's final disposition letter.

The parties dispute whether the Judicial Hearing Board found that Plaintiff violated the Student Code of Conduct and whether the Board imposed the four-year suspension. Defendant cites an affidavit from Temaat and the May 2, 2017, Hearing disposition letter as evidence that the Judicial Hearing Board found that Plaintiff had engaged in the conduct charged and imposed the ultimate sanction. Temaat's affidavit, however, is wholly conclusory on this point, and the Hearing disposition letter does not mention the Judicial Hearing Board, does not come from any member of the Board, and does not carbon-copy any member of the Board. Rather, the letter is

---

[12] In his Notice of Appeal, Plaintiff indicates that he did not receive the disposition letter until June 6, 2017, and thus, his June 9, 2017, Notice of Appeal was timely filed within five days of receiving the disposition letter. Defendant asserts in its statement of facts that "Plaintiff timely appealed the hearing decision," citing to this Notice of Appeal. Accordingly, the Court will presume for purposes of summary judgment that Plaintiff received the disposition letter on or about June 6, 2017.

signed by Temaat. Plaintiff notes that he never received any communication from any member of the hearing panel and argues that the hearing panel was not independent and had no real authority or discretion. To support his argument, he cites the fact that he was invited to attend a post-hearing mitigation meeting with only Temaat—and not with the members of the Judicial Hearing Board.

On July 24, 2017, Plaintiff filed the current action alleging violations of his due process and First Amendment rights, and asking that the Court exercise judicial review over DCCC's disciplinary proceedings. Defendant filed a motion to dismiss and the Court dismissed Plaintiff's "judicial review" claim, but found that Plaintiff had adequately stated a claim for violations of his due process and First Amendment rights. This matter comes before the Court on Defendant's Motion for Summary Judgment.

## II. Legal Standard

Summary judgment is proper if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[13] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[14] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[15] If the movant carries his initial burden, the nonmoving party may not simply rest on its pleading, but must instead "set forth specific facts" that would be admissible in evidence in the

---

[13] Fed. R. Civ. P. 56(a).

[14] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[15] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted).

event of trial from which a rational trier of fact could find for the nonmovant.[16] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[17] The Court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[18]

### III. Analysis

#### A. Subject-matter jurisdiction

Defendant argues that this Court lacks subject-matter jurisdiction to hear Plaintiff's § 1983 claims alleging violations of the First and Fourteenth Amendments to the U.S. Constitution. Defendant argues that K.S.A. § 60-2101(d) requires individuals to appeal the result of a quasi-judicial hearing, such as the one here, and that a failure to appeal in Kansas state court under K.S.A. § 60-2101(d) results in the hearing decision becoming a "final judgment" entitled to preclusive effect under the doctrine of res judicata. It argues that K.S.A. § 60-2101(d) provides the exclusive avenue for relief, even for § 1983 claims. In sum, Defendant argues that in Kansas plaintiffs may never pursue § 1983 claims in federal court if the state agency provides an arguably quasi-judicial proceeding prior to a deprivation.

Defendant's argument that K.S.A. § 60-2101(d) provides the "exclusive" avenue for relief fails to address, let alone distinguish, binding U.S. Supreme Court and Tenth Circuit precedent and has no merit.[19] Although plaintiffs may pursue § 1983 claims in state court, K.S.A. § 60-

---

[16] *Id.* (citing Fed. R. Civ. P. 56(e)).

[17] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citation omitted).

[18] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[19] *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, Syl. (a)-(f) (finding state notice-of-claim statute preempted with respect to federal civil rights actions brought under § 1983 in state court); *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 500-01 (1982) (holding that a party need not exhaust state administrative remedies prior to bringing an

2101(d)—a procedural statute identifying when various state courts have jurisdiction to hear appeals—does not preclude a plaintiff from bringing such an action in federal court.

Likewise, the Court disagrees that Plaintiff's failure to appeal the hearing decision to Kansas state court deprives this Court of jurisdiction under principles of res judicata. Under Kansas law,[20] res judicata requires "(1) the same claim; (2) the same parties; (3) claims that were or could have been raised; and (4) a final judgment on the merits."[21] Defendant does not argue that Plaintiff previously pursued his claims in state court. Instead, it argues that Plaintiff could have and should have appealed his suspension in state court, that he could have and should have pursued his current arguments in state court, and that his failure to do so renders the hearing panel's decision a "final judgment" entitled to preclusive effect. While the Court considers this legal argument without merit,[22] even if it had merit under some circumstances, Defendant has not shown that the administrative proceeding at issue *here* afforded Plaintiff "the type of due process protections found in judicial process"—a prerequisite to giving administrative proceedings preclusive effect.[23]

---

action under § 1983); *Brown ex rel. Brown v. Day*, 555 F.3d 882, (10th Cir. 2009) (explaining when a federal court may abstain from hearing a § 1983 claim under *Younger v. Harris*, 401 U.S. 37 (1971)).

[20] Because Defendant argues that a Kansas "judgment" precludes the current action, the Court applies Kansas preclusion principles.

[21] *In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cty.*, 293 Kan. 768, 272 P.3d 583, 589 (2012).

[22] *See, e.g.*, *Neunzig v. Seaman U.S.D. No. 345*, 239 Kan. 654, 722 P.2d 569, 658-59 (1086) (discussing res judicata in the context of *lateral* moves from one administrative agency to another); *Parker v. Kan. Neurological Inst.*, 13 Kan. App. 2d 685, 778 P.2d 890, 891-92 (1989) (concluding that administrative decision not entitled to res judicata effect as to subsequent court proceeding).

[23] *Spielman v. City of Newton*, 1997 WL 534468, at *2 (D. Kan. 1997) (citing *Neunzig v. Seaman U.S.D. No. 345*, 239 Kan. 654, Syl. ¶ 3, 722 P.2d 569 (1986)) (Under Kansas law, an administrative action may only be res judicata "when the proceeding affords the type of due process protections found in judicial process.").

In Kansas, "the doctrine of res judicata applies to administrative determinations when the first administrative proceeding provides the procedural protections similar to court proceedings when an agency is acting in a judicial capacity."[24] In other words, "while the doctrine of res judicata/claim preclusion generally does not apply to administrative agency actions, the doctrine will apply to administrative determinations when the agency acts in its judicial capacity and conducts proceedings so as to provide the necessary procedural protections."[25] "Significant to the court, 'if there is reason to doubt the quality, extensiveness, or fairness of procedures followed . . . redetermination of the issues is warranted.' "[26]

Defendant has not established that no genuine issue of material fact exists with respect to whether the proceeding before the Judicial Hearing Board conformed with due process protections found in the judicial process. The undisputed facts before the Court, when viewed in the light most favorable to Plaintiff, suggest a potential due process violation in the lack of an unbiased decision-maker—Temaat. While not the focus of his due process claim, Plaintiff suggests that the hearing panel was not independent and that DCCC administration "wield[ed] authority over plaintiff's fate." He cites his post-hearing invitation to present mitigating evidence in a meeting with Temaat—not the rest of the hearing panel—and notes that the decision and sanction came directly from Temaat, without even carbon-copying any members of the hearing panel.

---

[24] *Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1135 (D. Kan. 2018) (quotations, citations, and alterations omitted).

[25] *Id*. (internal citations omitted).

[26] *Kester v. Shawnee Mission U.S.D. No. 512*, 252 F. Supp. 2d 1180, 1189 (D. Kan. 2003) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 979 (10th Cir. 1986)) (alteration in original).

The record lacks sufficient evidence to determine Temaat's role(s) in conjunction with the Hearing, and the undisputed evidence before the Court, when viewed in the light most favorable to Plaintiff, suggests that Temaat may have acted in both a prosecutorial and an adjudicative role at the Hearing. If so, this would raise grave concerns regarding whether Plaintiff received the benefit of an impartial decision-maker, as required to satisfy the requirements of due process.

"[A] 'fair trial in a fair tribunal is a basic requirement of due process.' "[27] "This applies to administrative agencies which adjudicate as well as to courts."[28] While "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation,"[29] the combination of prosecutorial and adjudicate functions raises serious concerns regarding the impartiality of the adjudicator.[30] "Personal bias may be shown by prior statements going to the merits or animus that establish the decisionmaker cannot be fair."[31] Further, "[t]he presence of a single biased decision-maker taints the tribunal and therefore may result in a violation of due process, even if the other members of the panel do not independently share in her bias."[32]

Temaat's role(s) in the events prior to the hearing, at the hearing, and after the hearing, on the current record, present viable due process concerns regarding whether Plaintiff received an impartial decision-maker at his Hearing. Evidence in the record suggests that Temaat participated

---

[27] *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

[28] *Id*.

[29] *Id*. at 58.

[30] *See Williams v. Pennsylvania*, 136 S. Ct. 1899, 1901-02, 1905-06 (2016).

[31] *Riggins v. Goodman*, 572 F.3d 1101, 1113 (10th Cir. 2009) (citation omitted).

[32] *Bjorklund v. Miller*, 467 F. App'x 758, 765 (10th Cir. 2012) (citing *Hicks v. City of Watonga*, 942 F.2d 737, 748 (10th Cir. 1991)).

in the decision or decision-making process after the Hearing.[33] The record also includes evidence suggesting that Temaat served in a prosecutorial/adversarial role at the Hearing.[34] Serving in a prosecutorial role, as opposed to an investigatory role, *and* in an adjudicative role in the same proceeding presents serious due process concerns.

Defendant has not presented evidence to clarify Temaat's role(s) in conjunction with the Hearing, and the record, when viewed in the light most favorable to Plaintiff, suggests that Temaat served in both a prosecutorial and adjudicative capacity. Accordingly, Defendant has failed to show that no genuine issues of material fact exist and that Plaintiff received "the type of due

---

[33] For example, Temaat's title for purposes of the hearing is one typically associated with a decision-maker. Temaat's affidavit represents that she served as the "Hearing Officer" for the Hearing, the undisputed facts section of Defendant's brief refers to her as the "presiding officer," in Defendant's Exhibit E, Temaat refers to herself as the "Chief Judicial Officer," in Plaintiff's Exhibit E, Temaat is identified as participating in the pre-hearing conference in her capacity as "special judicial officer" and signed a memorandum as the special judicial officer. Additionally, Plaintiff received an invitation to provide mitigating evidence to Temaat—without the hearing panel. And, Temaat prepared the letter informing Plaintiff of the final disposition of the Hearing. That letter does not carbon-copy any members of the hearing panel or otherwise reference the hearing panel. This letter is later referred to as "the conduct review panel's final disposition letter," suggesting that Temaat was part of the conduct review panel. Finally, it is unclear whether Temaat was present during or participated in any deliberations of the hearing panel. At the conclusion of the hearing, Temaat stated, "ok, the next phase is the hearing panel will go into deliberations and the deliberations are closed and we will try to have a a decision on their part, I can't tell you exactly how long it will take, but we'll try to do it as quickly as possible, and their decisions will be communicated to you in writing. . ." At some points in this quote, as well as throughout the hearing, Temaat says "we," and at other points she says "their." At another point in the hearing, Temaat states "we most likely will be modifying your temporary sanctions." Based on this record, it is an open question as to whether Temaat was present during or participated in deliberations, and it is unclear what Temaat's relationship was with the hearing panel.

[34] Temaat appears to have represented Defendant at the Hearing and did so in an adversarial position to Plaintiff in putting on evidence to prove that Plaintiff violated the student code of conduct. Temaat began the evidentiary portion of the hearing by stating, "We will start calling our witnesses related to a couple of incidents that led to us all being here that we believed were violations of the code of conduct on your part and that's why we put the temporary sanctions in place. First witness that I would like to call is . . ." Defendant's Exhibit E shows that Temaat called witnesses, presented witnesses to prove the alleged incidents of misconduct, examined witnesses, and corrected a witness' testimony when it differed from Temaat's own recollection of events. In viewing the undisputed evidence in the light most favorable to Plaintiff, it appears that Temaat acted in an adversarial and prosecutorial role at the Hearing.

process protections found in judicial process."[35] Accordingly, even *if* an administrative proceeding similar to the one in this case could preclude a subsequent § 1983 claim in this Court, Defendant has failed to show that Plaintiff's Hearing is entitled to such treatment.

**B.     Procedural Due Process**

"The Due Process Clause of the Fourteenth Amendment does not prohibit the government from depriving an individual of 'life, liberty, or property'; it protects against governmental deprivations of life, liberty, or property 'without due process of law.' "[36] Thus, to pursue a procedural due process violation, the plaintiff must have been deprived of a constitutionally protected right without due process of law, and the defendant must have "acted under color of state law."[37] Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[38] Defendant does not contest for purposes of this motion whether Plaintiff had a protected property interest in his continued enrollment. Accordingly, the Court will analyze only the second inquiry.

---

[35] *Spielman*, 1997 WL 534468, at *2 (citing *Neunzig*, 722 P.2d 569, Syl. ¶ 3) (Under Kansas law, an administrative action may only implicate res judicata "when the proceeding affords the type of due process protections found in judicial process.").

[36] *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

[37] *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). Here, Defendant acted under color of state law because community colleges are considered political subdivisions under Kansas law. *Bland v. Kan. City Cmty. Coll.*, 271 F. Supp. 2d 1280, 1287 (D. Kan. 2003).

[38] *Lauck v. Campbell Cty.*, 627 F.3d 805, 811 (10th Cir. 2010) (quotation marks and citation omitted).

Due process requires, at a minimum, notice and a meaningful opportunity to be heard prior to the deprivation of a constitutionally protected interest.[39] The specific process due in a given case depends on the specific circumstances presented, as "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."[40] For example, the requirements for procedural due process in school proceedings differ depending on whether the hearing at issue involves an academic judgment or a disciplinary action—the latter type of hearing requiring more stringent procedural safeguards.[41] Further, suspensions lasting longer than 10 days or expulsions may require more formal procedures than short suspensions.[42]

As explained above, one requirement of due process is an impartial decision-maker. Here, genuine issues of material fact exist as to Temaat's role(s) in conjunction with the Hearing, and those issues preclude this Court from granting Defendant's Motion for Summary Judgment. Accordingly, because Defendant has failed to show that no genuine issue as to any material fact exists and that judgment in its favor is proper, Defendant's Motion for Summary Judgment is denied as to Plaintiff's due process claim.

**C.      First Amendment Retaliation**

To succeed on his claim for First Amendment retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) Defendant's actions caused him to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the

---

[39] *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

[40] *Id.* at 578.

[41] *Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986).

[42] *Goss*, 419 U.S. at 584.

Defendant's conduct was "substantially motivated as a response to [Plaintiff's] protected conduct."[43] Defendant concedes the first element and does not address the second, but instead argues that Plaintiff cannot satisfy the third element because "it has already been established that plaintiff engaged in intimidating and threatening behavior" and such behavior is not protected.

Defendant's argument largely relies on the false premise that the "findings of the Judicial Hearing Board and Review Officer" have binding effect given Plaintiff's failure to appeal under K.S.A. § 60-2101(d).[44] As explained above, the Court rejects this position. And, contrary to Defendant's assertion, Plaintiff's claim does not amount to mere "raw speculation."

The undisputed facts show that Plaintiff met with Dr. Nolte on December 5, 2016, in Dr. Nolte's office, that Plaintiff attempted to meet with Dr. Nolte again on December 8, 2016, but did not, and that shortly thereafter, Plaintiff received a notice of violation of the Student Code of Behavior prohibiting, aside from one exception, Plaintiff from entering campus until his Hearing. The close timing of the protected activity and temporary sanctions, coupled with Lanning's statement as to the events occurring on December 5-10, 2016, and her decision to impose temporary sanctions, strongly supports the causation element of Plaintiff's claim.[45] Lanning stated that she spoke with Dr. Nolte on December 5 and that Dr. Nolte informed her that he met with

---

[43] *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015) (quotation marks and citation omitted).

[44] Defendant also seeks to undercut Plaintiff's claim by arguing that others who shared Plaintiff's views were not retaliated against or disciplined. Defendant, however, has not provided facts to support this assertion. The fact cited by Defendant in support of this claim simply states: "[o]ther students and employees, as well as members of the public shared Mr. VanNahmen's opposition to the land sale." It does not assert that others voiced their concerns directly to Dr. Nolte, or that others demanded Dr. Nolte's resignation. Indeed, sharing the same view as Plaintiff is not equivalent to voicing that view or demanding a public figure's resignation.

[45] *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1236 (10th Cir. 2009) (explaining that "[a]lthough protected conduct closely followed by adverse action may justify an inference of retaliatory motive, the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive").

Plaintiff prior to their meeting. Plaintiff did not receive temporary sanctions at this time, despite the fact that this is the only time Plaintiff is alleged to have acted in a threatening behavior. Rather, Plaintiff received temporary sanctions only after he sought to deliver a letter to Dr. Nolte that demanded his resignation. Lanning stated during the Hearing:

> On Friday December 9, at 8:00 a.m. 2016, at 8:00 a.m. I was informed by Beverly Temaat, Vice President of Student Affairs, that [Plaintiff] requested the president's resignation immediately for his involvement in selling the college property. At this point, and as the dean of students, I temporarily trespassed [Plaintiff] from camp -- campus-wide except for his final exam in A&P1 for behavior misconduct. I gave the letter to Beverly Temaat to give to security to deliver to [Plaintiff].

Defendant does not contend, and nothing in the record suggests, that Plaintiff acted disorderly or in a threatening manner when he delivered the letter demanding Dr. Nolte's resignation on December 8, 2016. Yet, Plaintiff was charged with misconduct on December 5 *and* December 8.

When viewing these facts in the light most favorable to Plaintiff, genuine questions of material fact exist as to whether Defendant's conduct was substantially motivated as a response to Plaintiff's protected conduct.[46] Accordingly, Defendant's Motion for Summary Judgment is denied as to Plaintiff's First Amendment retaliation claim.

### IV. Conclusion

K.S.A. § 60-2101(d) does not provide the exclusive avenue of relief for Plaintiff's § 1983 claims and the administrative proceeding does not preclude this action under principles of res judicata. Genuine issues of material fact preclude this Court from granting summary judgment as

---

[46] Defendant argues that Plaintiff has abandoned his First Amendment retaliation claim by making a one-sentence response to Defendant's arguments. The Court disagrees. First, Defendant's arguments relied largely on this Court finding the disposition of the Hearing binding on this Court—which Plaintiff contested. Second, Defendant bears the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law—it failed to meet this burden. And third, Plaintiff made *some* response—albeit lacking in any real substance.

to Plaintiff's due process and First Amendment retaliation claims. Accordingly, the Court denies Defendant's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 31) is hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 4th day of December, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE